29 A.3d 745 (2011)
422 N.J. Super. 475
STATE of New Jersey, Plaintiff-Respondent,
v.
Raymond MALDON a/k/a Raymond Maldonado, Defendant-Appellant.
Docket No. A-1473-09T1
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 2011.
Decided October 27, 2011.
*746 Joseph E. Krakora, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, on the brief).
Marlene Lynch Ford, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Supervising Assistant Prosecutor, of counsel and on the brief; William Kyle Meighan, Assistant Prosecutor, on the brief).
Before Judges PAYNE, REISNER and SIMONELLI.
The opinion of the court was delivered by
REISNER, J.A.D.
Defendant Raymond Maldon appeals from an August 3, 2009 order denying his petition for post-conviction relief (PCR). Because the petition involves emerging legal issues that should be decided on the basis of a complete factual record, and defendant presented a prima facie case of ineffective assistance of counsel, we remand this matter to the trial court for an evidentiary hearing.

I
We begin our discussion of the facts by briefly reviewing defendant's criminal history. In 1993, defendant was convicted of kidnapping, N.J.S.A. 2C:13-1b, aggravated sexual assault, N.J.S.A. 2C:14-2a, and official misconduct, N.J.S.A. 2C:30-2a, and was sentenced to twenty years in prison. In that case, while dressed in his uniform as a ConRail police officer, defendant stopped a seventeen-year-old female driver, forced her into his unmarked police car, drove her to a deserted area and raped her.
After defendant was paroled, he was accused of committing additional sex-related crimes between January and March 2000. Specifically, he was accused of setting up a hidden video camera in the bathroom of the house he shared with his tenant, D.W., and surreptitiously obtaining pictures of D.W., her mother and her young son in various states of undress. Defendant was tried and convicted on two counts of third-degree wiretap offenses, N.J.S.A. 2A:156A-3a and N.J.S.A. 2A:156A-5a, and was sentenced on August 30, 2002 to five years in prison of which half was to be served without parole.
The incidents which are the subject of this appeal took place while defendant was either on parole or free on bail in connection with the previously-described offenses. In an indictment issued on October 26, 2000, defendant was accused of sexually assaulting D.W. during the night of March 18, 2000, while she was sleeping. Defendant was charged with second-degree sexual assault, N.J.S.A. 2C:14-2c, and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3b. His trial on those charges ended in a mistrial on September 7, 2001. While free on bail and awaiting re-trial, defendant was accused of fourth-degree criminal sexual contact for allegedly committing a similar sexual assault on L.A.B. on September 28, 2001. On September 9, 2002, defendant agreed to plead guilty to two counts of fourth-degree criminal sexual contact on D.W. and L.A.B., in return for dismissal of all remaining charges and a recommendation for two concurrent sentences of eighteen months in prison. In his plea colloquy, he admitted touching the victims' "intimate areas" without their "full consent."
Prior to entering his guilty plea, defendant signed a plea form containing a series of questions aimed at defendants pleading guilty to offenses that could subject them to imprisonment at the Adult Diagnostic and Treatment Center. Fourth-degree sexual contact was not one of those offenses. *747 However, question eight on this form specifically asked the following:
Do you understand that if you are confined at the Adult Diagnostic and Treatment Center or any other facility for commission of a sexually violent offense, you may upon completion of your term of confinement be involuntarily committed to another facility if the court finds, after a hearing, that you are a sexually violent predator in need of involuntary civil commitment?
Like all of the other questions on the form defendant signed, this question was marked "N/A," although under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, fourth-degree criminal sexual contact could constitute a predicate act for defendant's civil commitment. See N.J.S.A. 30:4-27.26(a) (defining "sexually violent offense" as including criminal sexual contact); N.J.S.A. 30:4-27.26(b); State v. Bellamy, 178 N.J. 127, 136, 835 A.2d 1231 (2003). At defendant's plea hearing, he was advised that Megan's Law, N.J.S.A. 2C:7-1 to -23, did not apply to the offenses to which he was pleading guilty. There was no mention of civil commitment at the hearing.
Pursuant to the plea agreement, defendant was sentenced on November 1, 2002, to an aggregate eighteen-month prison term, to be served concurrent to the five-year sentence he was already serving for the illicit videotaping convictions.[1] Shortly before defendant's release from prison, almost six years later, the State successfully moved to have him civilly committed under the SVPA. In granting the petition for commitment on July 30, 2008, Judge Perretti considered expert opinions based in part on defendant's guilty plea to the fourth-degree sexual contact offenses, in addition to his other sexual offenses.
Almost immediately thereafter, on August 8, 2008, defendant filed a pro se PCR petition, which was later amended after counsel was assigned. In a certification accompanying the petition, defendant asserted that when he was considering the plea offer, his trial attorney had informed him "that he would not be civilly committed." Defendant contended that his attorney rendered ineffective assistance of counsel by providing this misinformation. He further attested that "[h]ad I been advised that I could be civilly committed upon release . . . I would have gone to trial." Defendant contended that he did not know that "he could be civilly committed until April 2008, and as such has excusable neglect for late filing of his claim petition." Defendant also submitted a certification from his trial counsel in which the attorney admitted the following:
I specifically noted on the Supplemental Plea form for Sexual Offenses, that civil commitment did not apply. This was denoted with the marking "N/A." . . . Had I known that he could be civilly committed upon release . . . I would have informed [him] of such before allowing him to enter his plea.
At the oral argument on the PCR petition, defendant's PCR counsel insisted that defendant was entitled to an evidentiary hearing because he presented a prima facie case on both prongs of the Strickland/Fritz test.[2]See State v. Preciose, 129 N.J. 451, 462-63, 609 A.2d 1280 (1992). PCR counsel argued that, because defendant's *748 trial counsel affirmatively misinformed defendant about a highly significant consequence of his plea, he rendered ineffective assistance. He also contended based on the record of the first trial, which ended in a mistrial during jury deliberations, that the State had a weak case, which accounted for the State's very favorable plea offer. He argued that, had defendant known that he might be civilly committed as a result of pleading guilty, he would have insisted on going to trial again and might well have been acquitted.
The State acknowledged State v. Bellamy, 178 N.J. 127, 835 A.2d 1231 (2003), which held that defendants considering pleading guilty to sex offenses must be informed about the possibility of civil commitment, and a defendant not informed of those consequences could move to withdraw his guilty plea. However, the Court in Bellamy held that its ruling would only have pipeline retroactivity. Id. at 143, 835 A.2d 1231. The State argued that, because defendant did not file a direct appeal, his case was not in the pipeline and he was not entitled to relief under Bellamy. The State also contended that it made no difference to the result whether defendant was not informed or was misinformed about the possibility of civil commitment. The State argued that "the only place where misinformation is a basis for vacating a plea is in the deportation context in New Jersey and in federal law."
In his oral opinion, the PCR judge found that defendant was not misinformed but rather was "uninformed." He reasoned that the plea form (Additional Questions for Certain Sexual Offenses Committed On or After December 1, 1998) by its terms only applied to certain offenses listed at the beginning of the form and "did not apply to the charges to which the defendant was pleading guilty." Therefore, he considered that the entire form was not applicable to defendant's situation, and the notation "N/A" was correct. The judge reasoned that because Bellamy, which dealt with "uninformed" defendants, only had pipeline retroactivity, defendant was not entitled to relief. He therefore did not further address defendant's legal arguments concerning his having been misinformed about the consequences of his guilty plea. The judge also did not address the timeliness of defendant's petition.

II
On this appeal, defendant argues that his PCR petition was timely; that his trial counsel rendered ineffective assistance by giving him inaccurate advice about the consequence of his guilty plea; that he was entitled to an evidentiary hearing on his PCR petition; and that he was deprived of the right to a jury trial because a judge rather than a jury made the decision to civilly commit him. He presents the following points for our consideration:
POINT I: TRIAL COUNSEL GAVE DEFENDANT INCORRECT LEGAL ADVICE PRIOR TO THE ENTRY OF DEFENDANT'S GUILTY PLEAS, THAT THE TWO CRIMES DEFENDANT PLED GUILTY TO WOULD NOT SUBJECT HIM TO CIVIL COMMITMENT UNDER THE SEXUALLY VIOLENT PREDATORS ACT, THUS DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
POINT II: THE FAILURE OF TRIAL COUNSEL AND THE TRIAL COURT TO EXPLAIN THAT DEFENDANT COULD BE COMMITTED UNDER THE SEXUALLY VIOLENT PREDATORS ACT CAUSED DEFENDANT TO LACK KNOWLEDGE AND UNDERSTANDING OF THE PLEA *749 AGREEMENT, RENDERING HIS PLEA DEFECTIVE, BECAUSE HE NEVER KNOWINGLY WAIVED HIS RIGHT TO HAVE A JURY DECIDE IF HE WAS GUILTY OF CRIMES THAT LED TO HIS COMMITMENT AS A SEXUALLY VIOLENT PREDATOR, THUS DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL. (Partially Raised Below)
POINT III: THE PCR COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING. POINT IV: THE TIME BAR OF R. 3:22-12 SHOULD NOT BE APPLIED TO DEFENDANT'S PETITION FOR POST CONVICTION RELIEF.
Addressing points two and four, we agree that defendant's petition was timely. Assuming the accuracy of his sworn assertions and those of his counsel, defendant could not have filed the petition earlier, because until the State moved to have him committed, he did not know that the conviction resulting from his guilty plea could be used as the basis for his civil commitment. See R. 3:22-12(a)(1); State v. Bringhurst, 401 N.J.Super. 421, 432-33, 951 A.2d 238 (App.Div.2008). Moreover, as discussed below, defendant presented a prima facie case of ineffective assistance of counsel. Id. at 423-24, 951 A.2d 238. Defendant's point two partially overlaps his point one. To the extent it raises arguments concerning a jury deciding civil commitment issues, it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
We turn next to defendant's claims that he received ineffective assistance of counsel and was entitled to an evidentiary hearing. Where a defendant files a PCR petition seeking to set aside a guilty plea based on ineffective assistance of counsel, he or she must satisfy the following two-part test:
To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases"; and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."
[State v. DiFrisco, 137 N.J. 434, 457, 645 A.2d 734 (1994) (citations omitted).]
See State v. Nuñez-Valdéz, 200 N.J. 129, 139, 975 A.2d 418 (2009) (applying DiFrisco test).
We conclude that the evidence, fairly construed, establishes at least a prima facie case that defendant was misinformed as to the consequences of his guilty plea, and that his attorney was responsible for misinforming him. A reasonable defendant reading question eight could easily misconstrue the question, together with the "N/A" answer, as meaning that he could not be civilly committed based on a guilty plea to criminal sexual contact. Compare Nuñez-Valdéz, supra, 200 N.J. at 137, 143-44, 975 A.2d 418 (addressing a question on a plea form concerning the immigration consequences of a guilty plea). Further, defendant affirmatively certified that his attorney told him he would not be civilly committed, and the attorney at least obliquely admitted misinforming his client. Defendant also presented at least some legally competent evidence that, had he not been misinformed, he would have insisted on going to trial.
Because the PCR court found that defendant was not misinformed, the court avoided addressing the significant legal issues this case presents. Those questions include whether a claim of misinformation *750 about the SVPA consequences of a guilty plea to a sex offense allows a defendant to avoid the "pipeline-retroactivity-only" limitation the Court set on its holding in Bellamy. As background, we briefly outline the pertinent recent case law.
The Court has emphasized that Bellamy has prospective application and that the State's ability to civilly commit a defendant does not depend on the defendant's having had prior notice of the possibility that commitment would be a collateral consequence of a conviction:
In Bellamy, supra, this Court held that "civil commitment under the Act is a collateral consequence" of a defendant's decision to plead guilty to an enumerated offense. This Court found therefore that an inmate convicted prior to enactment of the SVPA "of a predicate offense under the Act" need not have been informed of the Act's consequences. At the same time, however, the Court imposed a prospective requirement that, "prior to accepting a guilty plea to a predicate offense, trial courts must inform defendants of possible consequences under the Act." Thus, Bellamy makes clear that, although it is desirable, and now required, for a person whose convictions may subject him or her to commitment under the SVPA to be informed of such a consequence prior to entering a guilty plea, the lack of that notice does not preclude application of the SVPA to those whose convictions preceded the Bellamy holding.
[In re Commitment of J.M.B., 197 N.J. 563, 575, 964 A.2d 752 (2009).]
On the other hand, the Court has indicated its inclination to depart from the traditional differentiation between the penal consequences of a plea and its civil collateral consequences. As the Court recently stated in Nuñez-Valdéz:
Preliminarily, we note our agreement with amici that the traditional dichotomy that turns on whether consequences of a plea are penal or collateral is not relevant to our decision here. In State v. Bellamy, 178 N.J. 127, 138-39, 835 A.2d 1231 (2003), we approved of Chief Justice Wilentz's observation that whether a defendant should be advised of "`certain consequences of a guilty plea should not depend on ill-defined and irrelevant characterizations of those consequences.'" Id. at 139 [835 A.2d 1231] (quoting State v. Heitzman, 107 N.J. 603, 606 [527 A.2d 439] (1987) (Wilentz, C.J., dissenting)).
[Nuñez-Valdéz, supra, 200 N.J. at 138, 975 A.2d 418.]
In another recent case involving the deportation consequences of a guilty plea, the Supreme Court of the United States noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally `reasonable professional assistance' required under Strickland." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1481, 176 L.Ed.2d 284, 293 (2010) (quoting Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). However, the Court found it unnecessary to address that issue, due to "the unique nature of deportation." Ibid. For purposes of applying Strickland, the Padilla majority opinion declined to differentiate between counsel's misinforming a client about the deportation consequences of a plea and counsel's failure to inform a client about those consequences. Id. at ___, 130 S.Ct. at 1484, 176 L.Ed.2d at 296-97. However, it is not clear whether, for purposes of setting aside a guilty plea, the Padilla Court would consider civil commitment to be of the same magnitude as deportation and would therefore consider either misinformation or lack of information *751 to be a deprivation of federal constitutional magnitude.[3] At least one federal appeals court has construed Padilla as applying to misinformation about the possibility of civil commitment. Bauder v. Florida Dep't of Corrections, 619 F.3d 1272, 1275 (11th Cir.2010).
Finally, we note prior cases holding that if a defendant is affirmatively misinformed about a collateral consequence that is a central issue in the plea negotiations, the plea may not be knowing and voluntary. State v. Och, 371 N.J.Super. 274, 285-86, 852 A.2d 1143 (App.Div.), certif. denied, 182 N.J. 150, 862 A.2d 58 (2004) (forfeiture of office); State v. Garcia, 320 N.J.Super. 332, 339, 727 A.2d 97 (App.Div.1999) (deportation). See also, State v. J.J., 397 N.J.Super. 91, 99, 935 A.2d 1252 (App.Div. 2007) (noting same principle in dictum), appeal dismissed, 196 N.J. 459, 957 A.2d 1169 (2008); State v. Jamgochian, 363 N.J.Super. 220, 225, 832 A.2d 360 (App. Div.2003).
Because the PCR court found that defendant was not misinformed, the court did not allow defendant an evidentiary hearing, which would have provided a complete factual record on his PCR contentions. See Nuñez-Valdéz, supra, 200 N.J. at 142, 975 A.2d 418 (emphasizing the importance of a trial court's factual findings after an evidentiary hearing on a PCR petition, and the deference due those findings). Nor did the court address any of defendant's substantive legal contentions concerning the impact of misinformation on his legal rights. Given the ongoing development of the law in this area, we decline to decide those legal issues for the first time on appeal, and in the absence of a factual record. We therefore remand this matter for an evidentiary hearing on both the first and second Strickland prongs, followed by the PCR court's decision on the legal issues in light of that full evidentiary record. See State v. Luckey, 366 N.J.Super. 79, 85, 840 A.2d 862 (App.Div.2004).
In remanding, we recognize that this defendant had a significant history of sex-related crimes even before he pled guilty to these two fourth-degree sex offenses. Perhaps he would have been civilly committed even if he had not pled guilty to these two crimes. Further, if his counsel had advised him about the possibility of civil commitment, he might also have advised defendant that he already faced exposure under the SVPA for his prior sex crime convictions, particularly the rape. Moreover, defendant was facing a re-trial on a second-degree sexual assault charge in addition to criminal sexual contact. If convicted on the more serious charge, he potentially faced a very long prison term, particularly in light of his prior rape conviction.
All of these arguments feed into consideration of the second Strickland prong can defendant show that, had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so? Padilla, *752 supra, 559 U.S. at ___, 130 S.Ct. at 1485, 176 L.Ed.2d at 297 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). As the Court noted in Padilla, it is this second prong on which most PCR petitions of this type are likely to fail. Id. at ___ n. 12, 130 S.Ct. at 1485 n. 12, 176 L.Ed.2d at 297 n. 12. While this case may be no exception, the second prong, like the first prong, should be decided based on evidence, not speculation.
To summarize, because the law in this area is developing, and emerging legal issues are best decided on a complete record, we conclude that the trial court should hold an evidentiary hearing on this PCR petition. See Luckey, supra, 366 N.J.Super. at 85, 840 A.2d 862. That hearing should address both Strickland prongs: (1) Was defendant in fact misinformed? Did defendant actually read question 8, and if so, did he understand it to mean that he was not subject to civil commitment? Precisely what advice did his attorney give defendant? Did the attorney affirmatively tell defendant that he would not be civilly committed, did the attorney simply give no advice on the subject, or did he give some different advice? In this situation, what advice should an attorney have given a client in rendering effective assistance? (2) If defendant was misinformed, did that misinformation lead him to plead guilty when he otherwise would have insisted on going to trial? The answers to these questions may hinge in large part on defendant's credibility and that of any other witnesses he presents at the evidentiary hearing.
Remanded. We do not retain jurisdiction.
NOTES
[1] According to his brief, on September 27, 2002, defendant was separately sentenced to three years in prison for a parole violation; that sentence was consecutive to the five-year sentence he was already serving.
[2] Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
[3] As discussed in another panel's opinion in State v. Gaitan, 419 N.J.Super. 365, 373 (App. Div.), certif. granted, 206 N.J. 330, 20 A.3d 436 (2011), in some situations, federal constitutional law may afford defendants greater PCR rights than those available under State constitutional law. We are aware that our Supreme Court will be reviewing Gaitan, and has ordered a stay of cases involving PCR claims based on deportation issues, subject to a lifting of the stay if defendant can demonstrate irreparable harm. State v. Gaitan, No. M-1740, order dated July 26, 2011. In this case, defendant is currently suffering the severe deprivation of liberty inherent in civil commitment, and may also be experiencing the "Catch-22" effect of being unable to proceed in therapy because, in speaking with his therapists, he insists that he did not commit these crimes. Therefore, even if this were a Gaitan case, we would be of the view that his evidentiary hearing should proceed.