**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5057-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NOEL R. SURUY,
a/k/a NOE R. SURY,

    Defendant-Appellant.

_____

Submitted May 9, 2017 — Decided July 6, 2017

Before Judges Ostrer and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Indictment No.
11-12-1016.

Joseph E. Krakora, Public Defender, attorney
for appellant (William Welaj, Designated
Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor,
attorney for respondent (Robert J. Wisse,
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    Defendant Noel R. Suruy, who pled guilty to four counts of

second-degree aggravated assault, appeals the June 2, 2015 order

denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

## I.

Defendant testified to the following facts at his July 23, 2013 plea colloquy. Around 4:00 a.m. on August 14, 2011, defendant attacked and severely injured four people with a machete in and near the home of his ex-girlfriend, Y.R.[1] Y.R.'s thirteen-year-old daughter, eleven-year-old son, and a man in his early twenties were in the home. Defendant entered and asked the daughter where Y.R. was. When the daughter said she did not know, defendant became angry, got his machete from inside the home, and attacked her several times, causing lacerations on the back and side of her head, the back of her ear, and her lip and chin area, as well as injuries to her arms, her shoulder, and her finger. When the man in the home tried to defend the daughter, defendant hit him with the machete, swinging at his head to cause a serious injury but lacerating his arm. Y.R.'s son escaped unharmed.

Defendant left the home and found Y.R. and another man outside. Defendant believed this man was Y.R.'s paramour and proceeded to attack them both with the machete many times. Defendant intended to cause life-threatening injuries to both, but

---

[1] We use initials to protect the identity of the victim.

they both put up their arms to defend themselves. Y.R. suffered two large open wounds and a broken arm which required permanent plates and screws. Her companion received injuries on both of his hands, his left arm, his left ear, and the back of his neck, requiring multiple surgeries. Both have permanent scarring.

Defendant was charged with four counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a); four counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree unlawful possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1) or (2); two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), 9:6-1, and 9:6-3; and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

On July 23, 2013, defendant pled guilty before Judge Marilyn C. Clark to four counts of second-degree aggravated assault. Defendant initially claimed that he was defending himself against attacks from the two men and that he did not intend to harm Y.R. and her daughter. The prosecutor refused to accept defendant's statements as a factual basis, and trial counsel requested a recess to speak with defendant. After conversing with his counsel over the lunch break, defendant testified he intended to and did inflict serious bodily injury against all four victims. Pursuant to the

3

plea agreement, all other charges were dropped and the State recommended a total sentence of fifteen years in prison, which comprised two concurrent eight-year terms to run consecutively with two concurrent seven-year terms, with an 85% period of parole ineligibility.

In an October 2, 2013 judgment of conviction, Judge Clark sentenced defendant to the recommended sentence pursuant to the plea agreement. We affirmed defendant's sentence on our excessive sentencing calendar, but our order remanded for entry of an amended judgment of conviction to reflect the correct amount of jail credits. State v. Suruy, No. A-3249-13 (App. Div. July 1, 2014).

Defendant filed a pro se PCR petition on July 24, 2014, which was later supplemented by PCR counsel's letter-brief and defendant's certification of facts. On June 2, 2015, Judge Clark issued an oral decision on the record denying defendant's PCR petition without an evidentiary hearing.

Defendant timely filed a notice of appeal on July 16, 2015. He raises the following argument:

> POINT I — THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY H[E]ARING TO FULLY ADDRESS HIS CONTENTION THAT HE WAS ENTITLED TO WITHDRAW HIS GUILTY PLEA ON THE BASIS HE HAD FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL, RESULTING IN A GUILTY PLEA WHICH HAD NOT BEEN FREELY, KNOWINGLY AND VOLUNTARILY ENTERED.

4

Defendant argues he was entitled to an evidentiary hearing on his ineffective assistance of counsel claim. A PCR court need not grant an evidentiary hearing unless "'a defendant has presented a prima facie [case] in support of post-conviction relief.'" State v. Marshall, 148 N.J. 89, 158 (alteration in original) (citation omitted), cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Ibid. The court must view the facts "'in the light most favorable to defendant.'" Ibid. (citation omitted); accord R. 3:22-10(b). As the PCR court did not hold an evidentiary hearing, we "conduct a de novo review." State v. Harris, 181 N.J. 391, 421 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005). We must hew to our standard of review.

To show ineffective assistance of counsel, a defendant must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted in State v. Fritz, 105 N.J. 42 (1987). "The defendant must demonstrate first that counsel's performance was deficient, i.e., that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment.'"  State v. Parker, 212 N.J. 269, 279 (2012) (quoting Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693).  The defendant must overcome a "strong presumption that counsel rendered reasonable professional assistance."  Ibid.

Second, "a defendant must also establish that the ineffectiveness of his attorney prejudiced his defense.  'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. at 279-80 (quoting Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).  In the context of a guilty plea, the defendant must show "'there is a reasonable probability that, but for counsel's errors, [defendant] would not have pled guilty and would have insisted on going to trial.'"  State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (citation omitted); accord Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985). The defendant must also show "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284, 297 (2010); see State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

In his certification, defendant claimed trial counsel was ineffective because he did not use a Spanish interpreter during their consultations. Defendant asserted that as a result, he and trial counsel were "never on the same page." Defendant further claims he told trial counsel "I wanted to go to trial on the charges an[d] explain to the jury what truly happened." Defendant claimed trial counsel "took full advantage of the language barrier and viewed this as his opportunity to do the least amount of work as possible."

Defendant's certification is contradicted by the record. Defendant's testimony from the plea hearing reveals trial counsel met with defendant many times. The PCR judge, who was the trial judge, observed that trial counsel "did a great deal of work for the defendant, including hiring the private investigator that seems to have resulted in the plea [offer] going down [from twenty years in prison] to 15 years." See State v. Martini, 160 N.J. 248, 266 (1999) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (quoting Strickland, supra, 466 U.S. at 691, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695)). We cannot say these are the actions of an attorney who, as

defendant describes in his certification, "just wanted to rush [his] case along."

Regarding the alleged language barrier, defendant testified during the plea hearing that he is a permanent resident, has been in the United States for twenty-two years, spoke some English, and could read English. Defendant testified that he went through the indictment and the plea forms' questions with trial counsel, that he understood them and that he was satisfied with trial counsel's representation. The PCR judge noted defendant occasionally spoke in English in pretrial hearings and at sentencing. The judge was "absolutely convinced that the defendant is very fluent in English and communicated with [trial counsel] in English and had absolutely no difficulty in doing so."

In any event, defendant failed to show prejudice. Defendant had a Spanish interpreter at every court proceeding. The PCR court noted there were many status conferences where "all of [the] issues were discussed at length" with defendant present. The plea forms were written in both English and Spanish. Defendant testified he initialed each page and signed the forms to show he understood them and that he gave truthful answers. Defendant also testified that he understood he could go to trial, that he could testify, that trial counsel would represent him at trial, and that he was giving up those rights by pleading guilty. Defendant

testified his guilty plea was free and voluntary, and that no one forced, threatened, or coerced him to plead guilty. The trial court was satisfied defendant was pleading guilty freely and voluntarily.

"Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome[.]" State v. Simon, 161 N.J. 416, 444 (1999) (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136, 147 (1977)). "That is so because [defendant's] '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (quoting Blackledge, supra, 431 U.S. at 74, 97 S. Ct. at 1629, 52 L. Ed. 2d at 147).

Moreover, the PCR judge had heard defendant's statements and observed his demeanor at both the plea and sentencing hearings. The judge stated she "remember[ed] this plea fairly well because it was such a serious case." "In some cases, the judge's recollection of the events at issue may enable [her] summarily to dismiss a [post-conviction] motion." Blackledge, supra, 431 U.S. at 74 n.4, 97 S. Ct. at 1629 n.4, 52 L. Ed. 2d at 147 n.4. Further, Judge Clark reviewed the transcripts and found defendant's accusations were "clearly dispelled by the plea and sentencing

transcripts." The judge's observations are persuasive. See Simon, supra, 161 N.J. at 444-45 (rejecting a defendant's claim that his plea had been coerced, on the bases of his statements and the court's observations at the plea hearing); State v. DiFrisco, 137 N.J. 434, 452-54 (1994) (rejecting on the same bases a defendant's claim that he did not "understand the nature and consequences of his plea"), cert. denied, 516 U.S. 1129, 116 S. Ct. 949, 133 L. Ed. 2d 873 (1996).

Defendant certified that trial counsel "failed to realize that Count 2 charging my aggravated assault against Y.R. and Count 4 charging aggravated assault against [her daughter] was not applicable" because he did not "intend to cause any bodily injuries, or harm" to them, and his "intent was only to hurt the unknown males . . . after being attacked first." However, at the plea colloquy defendant testified he intended to cause Y.R. and her daughter life-threatening injuries. Defendant also testified that when he said the young man was "trying to attack" him, he meant the young man was trying to defend Y.R.'s daughter from his machete attack, and defendant did not want him to take the machete. Defendant admitted he "lash[ed] out with the machete" as soon as he encountered Y.R. and her companion. Indeed, defendant's own certification of "what truly happened" suggested he was the instigator.

Defendant notes that at the plea colloquy, he initially testified that "it was a fight and everybody got involved in the fight," that "they got in the middle," and that "the person that was with [Y.R.] got out and tried to attack me." However, the trial court advised defendant: "Sir, nobody wants to put words in your mouth, but if you want to plead guilty, you have to tell us what happened." The court observed defendant "does not appear to be answering questions" and "was not truly addressing the factual basis." After defendant spoke with trial counsel, defendant admitted his guilt in a thorough colloquy. The PCR judge who also witnessed the plea colloquy could properly find defendant himself had repudiated his prior attempts to blame the victims and deny guilt. The judge did "not see any confusion" in the plea colloquy, just "hesitancy to admit what he did."

Defendant certified trial counsel told him he "needed to cooperate in order for the plea to be received," and defendant only "cooperated" during the plea hearing because he was "intimidated and very fearful that if [he] did not, the prosecutor would give [him] more time." However, what trial counsel advised defendant was accurate, as were defendant's fears: he faced four first-degree attempted-murder charges each carrying a possible twenty-year sentence, as well as six second-degree charges and four other charges, under which he faced a total potential sentence

11

far in excess of the fifteen-year sentence under the "very favorable" plea offer defendant was jeopardizing by attempting to avoid admitting guilt.

Finally, defendant asserted that trial counsel told him he "had to plead guilty" and that he "felt pressured to do what my attorney told me because I was scared." This assertion appeared to reiterate trial counsel's advice and defendant's fears discussed above. To the extent it alleged something else, it was "too vague, conclusory, or speculative to warrant an evidentiary hearing[.]" Marshall, supra, 148 N.J. at 158; see R. 3:22-10(e)(2).

Thus, defendant failed to show "'there is a reasonable probability'" he "'would not have pled guilty and would have insisted on going to trial.'" Nunez-Valdez, supra, 200 N.J. at 139 (citation omitted). Moreover, defendant has not shown rejecting the plea bargain would have been a "rational" decision under his circumstances. Padilla, supra, 559 U.S. at 372, 130 S. Ct. at 1485, 176 L. Ed. 2d at 297.

Defendant has not presented a prima facie case of ineffective counsel in support of post-conviction relief. There is no "reasonable likelihood that [defendant's] claim will ultimately succeed on the merits." Marshall, supra, 148 N.J. at 158. Thus,

12

the PCR court was not required to grant an evidentiary hearing and properly exercised its discretion under R. 3:22-10.

     Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION