**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0467-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YEISSON ANTONIO
CONTRERAS-RIJO, a/k/a
YEISSON CABRERA-RIJO,
YEISSON CABRERA, and
YEISSON RIJO,

    Defendant-Appellant.

_____

Submitted October 10, 2019 – Decided December 4, 2019

Before Judges Nugent and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 12-03-0183.

Regis Fernandez, attorney for appellant.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Yeisson A. Contreras-Rijo appeals the denial of his petition for post-conviction relief (PCR), claiming his attorney did not advise him about the immigration consequences of his guilty plea. He argues his lack of knowledge constituted "excusable neglect" for not filing the petition within five years of his conviction. We affirm the denial of his PCR petition.

I.

Defendant was arrested after he took a piece of wood from his truck and swung it at a Home Depot loss prevention officer, who had confronted defendant about making returns of merchandise that were falsified. Defendant was indicted for first-degree robbery (count one), N.J.S.A. 2C:15-1, third-degree possession of a weapon (wooden board) for an unlawful purpose (count two), N.J.S.A. 2C:39-4(d), fourth-degree unlawful possession of a weapon (count three), N.J.S.A. 2C:39-5(d), and third-degree terroristic threats (count four), N.J.S.A. 2C:12-3(a) and (b).

Defendant pleaded guilty to count two. He signed the standard plea form, answering that he was not a United States citizen[1] and acknowledging the guilty plea may result in his removal from the United States. He answered "yes" that

_____

[1] Defendant is a citizen of the Dominican Republic. He has been a legal permanent resident of the United States since 2008.

A-0467-18T4

he understood he had the right to seek advice from an immigration attorney, "no" that he had not discussed the immigration consequences of his plea with an attorney and "no" that he did not want the opportunity to do so. He answered question 17f at the hearing—because it had been left blank—acknowledging "yes" that he was advised of his right to seek individualized legal advice on immigration consequences.

The trial court asked defendant at the plea hearing whether he was subject to a detainer from U.S. Immigration and Customs Enforcement (Immigration). His attorney advised the court that he did not think there was a detainer, but defendant told him that Immigration reviewed his documents at the jail. The trial judge reviewed the plea form immigration questions with defendant:

> THE COURT: All right. Mr. Contreras, just to go over that section of questions with you briefly. You do understand that even though you have legal permanent residency that you could be deported because of this conviction.
>
> DEFENDANT: Yes.
>
> THE COURT: Your lawyer's informed me that immigration went and spoke with you, looked at your documents at the jail. And as far as he knows, based on what you've told him, there

doesn't seem to be any action toward deportation being taken against you at this time. But do you understand that that could change at any time? Immigration might take an interest in having you deported, the Immigration Agency.

DEFENDANT: Yes.

THE COURT: And having been convicted of a crime it is certainly possible that that would occur. If not now or soon, sometime in the future. Do you understand that?

DEFENDANT: Yes.

THE COURT: Okay. But you've indicated in your forms that you don't want to speak with an immigration lawyer even though you understand you have the right to do so?

DEFENDANT: Yes.

THE COURT: Is that right?

DEFENDANT: I don't want that.

THE COURT: Okay. Has your family spoken to an immigration lawyer on your behalf, do you know?

DEFENDANT: No. They have not talked to anyone.

4

Defendant asked the trial court whether his guilty plea would affect his ability to become a citizen in the future. The court acknowledged it might.

> THE COURT: It might, yes. Knowing that do you want to consult an immigration lawyer before deciding whether to proceed with this guilty plea?
>
> DEFENDANT: No.
>
> THE COURT: Okay. All right. I don't know that they will bar you from citizenship. Again you would need an immigration lawyer to give you advice in that regard, but it is certainly possible. Do you understand that?
>
> DEFENDANT: Yes, I understand. It's all fine; correct.
>
> THE COURT: So even knowing that it's your wish at this time to proceed now with your guilty plea and not consult an immigration specialist; correct?
>
> DEFENDANT: Yes.

After defendant acknowledged the offense, the court accepted his plea finding that it was "entered freely and voluntarily. Defendant[] waived his right to a trial and related rights freely and voluntarily. He's done so with the advice of counsel and there's a factual basis for the plea."

5

On May 24, 2012, defendant was sentenced to time served—then 251 days—rather than the recommended 364 day custodial sentence, and to a two-year term of probation. He did not file an appeal from the guilty plea or sentence.

On April 17, 2014, defendant received notice from the Department of Homeland Security to appear for a removal proceeding under Section 240 of the Immigration and Nationality Act. 8 U.S.C. § 1229a. It alleged that under Section 237(a)(2)(A)(i) of the Act[2], defendant had been "convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed." He was required to show cause why he should not be deported.

Defendant filed this PCR petition nearly four years later, on April 13, 2018. In his supporting affidavit, he alleged his criminal attorney never advised him of the immigration consequences of pleading guilty. He claimed his attorney "simply told me not to worry about it on the day of my guilty plea." Defendant did not want to remain in jail any longer. He alleged his criminal attorney told him to say "no" in response to the judge's question about whether

---

[2] 8 U.S.C. § 1227(a)(2)(A)(i).

A-0467-18T4

he wanted to speak to an immigration lawyer "because I would continue to be detained until I spoke to an immigration attorney.  Thus, when the Judge asked me if I knew I could be deported[,] I said yes."  He claimed his attorney did not visit him in jail.  Defendant alleged that if his criminal attorney had met[3] with him and inquired about his immigration status, consulted with an immigration attorney, or conducted research, he would "not have pled guilty or at least have sought out other possible guilty pleas."  He claimed he did not know there were immigration consequences of [his] plea until he was notified in June 2014 to appear in immigration court.

Defendant's PCR petition was denied on August 21, 2018, by the same trial judge who heard the plea.  The court found that defendant "acknowledged the risk of deportation before entering his guilty plea."  It had advised defendant that deportation was "certainly possible[,]" which "compel[ed] [p]etitioner's serious consideration of [the] deportation risk."  His trial counsel "never made any statements . . . that deportation was unlikely."  The PCR court found defendant was not misinformed about his deportation risk; he was told it was "certainly possible."  At the plea hearing, defendant was asked on three

---

[3]  During the plea hearing, defendant acknowledged meeting with his attorney on October 5, 2011, which was six months before his guilty plea.

A-0467-18T4

occasions whether he wanted to speak with an immigration attorney but declined. The court believed there was no indication that defendant "would not have pleaded guilty if he had known that the risk of deportation was a certainty." The court found that defendant's plea was "entered knowingly, voluntarily and intelligently" because he:

> had sufficient knowledge of his deportation risks, evidenced by his decision not to consult with an immigration attorney, despite repeated attempts by the Court to confirm that he was aware of his risk of deportation. There [was] insufficient evidence showing that, but for the advice of his trial counsel, [p]etitioner would not have pleaded guilty.

The PCR court rejected defendant's claim that his petition should be treated as timely based on excusable neglect. Defendant understood the consequences of his guilty plea. He was "in fact, aware of the potential immigration consequences well before his [n]otice to [a]ppear in immigration court was served . . . ."

On appeal, defendant raises the following issues:

> I.   COUNSEL DID NOT ADVISE THE PETITIONER OF THE POSSIBLE IMMIGRATION CONSEQUENCES OF HIS GUILTY PLEA RESULTING IN A GUILTY PLEA THAT WAS NOT ENTERED KNOWINGLY AND INTELLIGENTLY CAUSING PREJUDICE TO THE DEFENDANT-PETITIONER[.]

8

II.   THE DEDENDANT-PETITIONER'S FAILURE TO FILE PCR WITHIN [FIVE] YEARS IS SUBJECT TO EXCUSABLE NEGLECT BECAUSE HE WAS NOT AWARE OF HIS DEPORTATION RISK UNTIL PLACED IN REMOVAL PROCEEDINGS LESS THAN [FIVE] YEARS AGO[.]

II.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).  In order to prevail on an ineffective assistance of counsel claim, defendant must meet a two-prong test by establishing that: (l) counsel's performance was deficient and the errors made were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 687.

In the plea bargain context, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, . . . [he] would not have pled guilty and would have insisted on going to trial.'"  State v. Gaitan, 209 N.J. 339,

351 (2012) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). He must also show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Defendant alleges his trial counsel misinformed him about the immigration consequences of pleading guilty because he did not inform him that deportation was a "practical certainty." Because defendant's plea was entered on April 9, 2012, the standards set forth in Padilla applied. 559 U.S. at 356.

Under Padilla "to satisfy a defendant's Sixth Amendment right to effective assistance of counsel, counsel has an affirmative obligation to inform a client-defendant when a plea places the client at risk of deportation." Gaitan, 209 N.J. at 356 (citing Padilla, 559 U.S. at 374). Our Supreme Court explained that following Padilla, "counsel is duty-bound to provide a client 'with available advice about an issue like deportation' and declared that 'the failure to do so' satisfies the attorney-deficiency prong in Strickland's analysis." Ibid. (quoting Padilla, 559 U.S. at 371). However, "immigration law is often complex, and the consequences of a conviction are often far from clear." State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016) (citing Padilla, 559 U.S. at 369). "[T]he specificity and definiteness of counsel's required advice varies with the clarity of the immigration law itself." Ibid.

Defendant claims he was not properly advised by his counsel, suggesting that counsel should have inquired into his immigration status, consulted with an immigration attorney and conducted research in order for defendant to make an informed decision about pleading guilty. He argues he was misinformed because deportation was a practical certainty.

We agree with the trial judge that defendant had "sufficient knowledge of his deportation risks . . . ." The transcript of the plea hearing showed unequivocally that defendant was advised, based on his plea, that it was certainly possible he might be deported. He was asked three times whether he wanted to discuss the matter with an immigration attorney but declined to do so. He was aware prior to his plea that Immigration had "checked his papers" while he was detained; therefore, he knew that Immigration was looking into his charges. Defendant showed concern, asking the court whether his conviction would affect his ability to become a citizen. The judge advised it might, asking defendant again if he wanted to consult with an immigration attorney, to which defendant again declined.

Counsel is not required to "use 'magic words'—'mandatory deportation' or 'presumptively mandatory deportation'—to fulfill his obligation to provide effective assistance to a non-citizen client." Blake, 444 N.J. Super. at 299.

Defendant was told the plea may affect his immigration status. Counsel reviewed the plea form with defendant. That "form accounts for those cases where removal is virtually inevitable[,]" advising a defendant that he can obtain "individualized advice from an attorney" about his situation. Id. at 297-98. Defendant repeatedly turned this down.

The record does not support defendant's claim he was misinformed about the immigration risks. He did not mention this to the judge at his plea or sentencing. Defendant had concerns because he asked the judge about the consequences of pleading guilty on any future citizenship application. He did not claim he was misled by his attorney until he filed this PCR petition in 2018, which was nearly four years after he became aware that Immigration sought his removal. This record is not consistent with his claim that he was misinformed about the immigration consequences. We agree with the trial court that defendant's attorney was not deficient because he was aware of the risk of deportation.

Defendant also did not demonstrate that "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so[.]" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (citing Padilla, 559 U.S. at 372). This

was the second requirement under Strickland. In this case, defendant had a favorable plea deal that would release him from jail with time served and two years' probation. He was facing a five-year sentence and $15,000 fine on the unlawful use of a weapon charge. The other counts of the indictment all were dismissed. He alleged he would have sought out other possible pleas, but there is no indication that any other pleas were offered or available.

We agree with the trial court that defendant's April 13, 2018 PCR petition was filed more than five years after his May 24, 2012 judgment of conviction. It was out of time and did not show "excusable neglect" under Rule 3:22-12 (a)(1)(A). A first PCR petition shall not be filed:

> more than [five] years after the date of entry . . . of the judgment of conviction that is being challenged unless:
>
> (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in fundamental injustice[.]
>
> [R. 3:22-12(a)(1)(A).]

Defendant was aware that Immigration reviewed his file prior to his plea. He had concern enough to ask if the plea would affect an application for citizenship. He was advised that the plea could affect his immigration status.

Defendant rejected the suggestion to consult with an immigration attorney about his specific situation.  We have concluded that <u>Strickland</u> was satisfied.  On this record, there simply are no facts that rise to the level of excusable neglect within the meaning of this Rule.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0467-18T4