# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2136-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEAN LUC BERTIER,

     Defendant-Appellant.

_____

> Submitted May 19, 2025 – Decided June 10, 2025
>
> Before Judges Jacobs and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-10-2612.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).
>
> William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Matthew T. Mills, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jean Luc Bertier appeals from the trial court's February 22, 2024 order and written opinion denying his petition for post-conviction relief ("PCR") without an evidentiary hearing. We agree with the PCR judge that defendant failed to establish a prima facie claim that his trial attorneys were ineffective and conclude that the trial court properly exercised its discretion when it denied the petition without an evidentiary hearing. Therefore, we affirm substantially for the reasons stated in the PCR judge's cogent written decision.

I.

In a sixteen-count indictment, defendant was accused of a variety of sex-related offenses that arose from an alleged assault that occurred at a casino hotel room in Atlantic City including first-degree aggravated sexual assault, second-degree conspiracy to commit aggravated assault, and several third- and fourth-degree offenses. These charges arose from an incident that involved a significantly inebriated juvenile victim who was seen on a surveillance video being escorted into a hotel room and forced into an elevator by defendant.

In the middle of jury selection, defendant pled guilty to one count of third-degree criminal restraint, N.J.S.A. 2C:13-2(a), and to harassment, N.J.S.A. 2C:33-4(b), a petty disorderly person offense. According to the plea agreement, defendant would receive a five-year prison sentence without any parole

ineligibility. Additionally, defendant would not be required to register under Megan's law.[1]

At the hearing, the trial court established the parameters of defendant's plea request with leading questions to trial counsel. The court then placed defendant under oath and proceeded to query defendant using open-ended questions to permit narrative responses. Consequently, the court ascertained defendant's age, defendant's fluency in the English language, and that defendant possessed a master's degree. Defendant asserted he was neither alcohol nor drug impaired, acknowledged he was satisfied both with his attorney's assistance and with the plea arrangement, and testified that he pled guilty voluntarily and was not coerced to do so. Defendant then provided a factual basis for both offenses that both the State and the trial court deemed satisfactory.

Notably, during the hearing, defendant asked to speak with his attorney and as appeared from counsel's recitation of that colloquy, to have asked a detailed and sophisticated question about the nature of the recommended sentence.

---

[1] Megan's law, codified at N.J.S.A. 2C:7-2, requires certain registration and notification requirements for sex offenders in New Jersey including mandatory registration with law enforcement and community notification based on the offender's risk assessment.

A-2136-23

After reviewing the questions contained in the plea forms defendant noted were "truthfully" answered, the trial court asked specific and pointed questions about defendant's immigration status:

> [Q.] Now paragraph 17 indicates that you're not a citizen of the United States. Is that correct[?]
>
> [A.] That's correct, your Honor.
>
> [Q.] And where are you a citizen or national[?].
>
> [A.] I'm a permanent resident of the United States, I have a French citizenship.
>
> [Q.] And you carry a U.S. passport at this point as a permanent resident?
>
> [A.] Yes, your Honor.
>
> [Q.] Now, the immigration consequences of your plea is something that I'm sure you have discussed with your counsel and with others, is that correct?
>
> [A.] Yes, your Honor.
>
> [Q.] And immigration consequences are not something that this court controls, they're controlled by the federal government. Do you understand that?
>
> [A.] Yes, your Honor.
>
> [Q.] Do you understand that as a result of your plea, the federal government could seek to change your current permanent residence statue and could seek to have you removed and returned to the Republic of France. Do you understand that?

4

[A.] Yes, your Honor.

The trial court specifically inquired further:

> [Q.] And understanding that, do you believe that you've had enough time to look into the issue and get whatever advice you need?
>
> [A.] Yes, your Honor.
>
> [Q.] And understanding all of that, you wish to enter into this guilty plea as well, is that correct?
>
> [A.] Yes, your Honor.

Lastly, the trial court invited defendant to ask any questions to the "meaning and effect of [his] guilty plea." Defendant did not.

Based on the questions defendant answered, the trial court found defendant guilty and noted in support of that conclusion:

> I find the defendant has had the advice of competent counsel with whom he's satisfied; he's entered his plea freely and voluntarily. He's knowingly, intelligently[,] and freely waived his right against self-incrimination to a trial of the evidence by a jury of his peers and to be confronted by the witnesses against him. He's not under any infirmity or intoxication. He's not been threatened [nor] coerced to enter a plea; he's not been promised anything outside that document which I incorporate; he understands the range of sentence to be imposed. As a result, his plea has an adequate and a provident factual basis. I accept it and find him guilty.

Before he was sentenced, defendant moved to withdraw his guilty plea. As part of that application, he argued that he was not informed of the immigration consequences from his plea and was not provided with any opportunity to consult with an immigration attorney. However, defendant withdrew his application before the trial judge decided it. Before the court considered the motion, defendant and the State reached revised plea bargain terms. The State agreed to reduce its request for five years in state prison and instead recommended a five-year probationary term conditioned on serving a 180-day county jail term. The trial court imposed this revised sentence.

Defendant did not appeal his conviction nor his sentence. Rather, five years later, defendant filed a PCR petition and argued that his conviction should be reversed because he was unaware that his plea would have adverse immigration consequences, including the likelihood of deportation. The State opposed the application and argued defendant's petition was not only procedurally barred under R. 3:22-4 because defendant's claim was reasonably discoverable in the trial court, but also was substantively infirm because defendant would not suffer a "fundamental injustice."

In a comprehensive eighteen-page opinion, the trial court considered defendant's arguments and denied all of them, concluding that defendant "was

put on notice at the time of his plea that he may be subject to deportation as a result of the charges included in his plea.  As stated under <u>Nuñez -Valdez</u>,[2] plea counsel effectively informed [defendant] of the consequences that, although were not certain at the time, were possible when pleading."

Appealing from this decision, defendant presents a single argument for consideration:

> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE NONE OF HIS LAWYERS EXPLAINED TO HIM, OR APPEARED TO UNDERSTAND, THAT THE OFFENSE TO WHICH HE PLED GUILTY WOULD MAKE HIM DEPORTABLE.  WHEN HIS MOTION TO WITHDRAW HIS GUILTY PLEA WAS WITHDRAWN, COUNSEL DID NOT EXPLAIN TO DEFENDANT THAT HE STILL FACED DEPORTATION BECAUSE OF THE NATURE OF THE OFFENSE.  THE NATURE OF THE PLEA BARGAIN SHOULD HAVE BEEN RESTRUCTURED SO AS TO AVOID DEFENDANT'S DEPORTATION.

Defendant argues his trial counsel was ineffective because counsel did not address any potential adverse immigration consequences that might potentially flow from his criminal restraint conviction.  We reject this argument and affirm

---

[2]  <u>State v. Nuñez-Valdez</u>, 200 N.J. 129 (2009).

the trial court's decision substantially for the reasons set forth in its thorough and well-reasoned opinion.

We amplify the court's decision with these comments.

## II.

### A.

Initially, we find defendant's application is procedurally barred under Rule 3:22-4.  Under that rule "a defendant is barred from raising any issue in a PCR petition that could have been raised on direct appeal unless one of three enumerated exceptions apply."  State v. Wildgoose, 479 N.J. Super. 331, 344 (App. Div. 2024) (citing State v. Nash, 212 N.J. 518, 546 (2013)).  Those exceptions include:  (1) "the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding;" (2) "enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice;" or (3) "denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey."  R. 3:22-4(a).

Additionally, Rule 3:22-3 states a PCR petition "is not . . . a substitute for appeal from conviction," and the Supreme Court has articulated "[a] defendant ordinarily must pursue relief by direct appeal, [] R. 3:22-3, and may not use

[PCR] to assert a new claim that could have been raised on direct appeal. [] R. 3:22-4." State v. McQuaid, 147 N.J. 464, 483 (1997).

Here, we agree with the trial court that defendant's PCR arguments were identical to those made in support of his application to withdraw his guilty plea. Defendant had every opportunity to raise this claim before the trial court and, if an adverse ruling resulted, before us on direct appeal after a judgment of conviction was entered. However, defendant did not pursue this form of relief. Consequently, his application is procedurally barred under Rule 3:22-3.

B.

Aside from this procedural shortfall, we are also satisfied the trial court properly denied defendant's claim for substantive reasons. PCR review might be permitted if enforcement of the bar under Rule 3:22-4 would result in "fundamental injustice." R. 3:22-4(a)(2). A sufficient claim would include allegations defendant's counsel was ineffective. Ibid. Following a review of the record, we agree with the trial court's determination that defendant's attorneys provided effective legal assistance.

To establish a prima facie ineffective assistance of counsel ("IAC") claim, defendant "must demonstrate a reasonable likelihood that [defendant's] claim, viewing the facts alleged in the light most favorable to the defendant, will

ultimately succeed on the merits." R. 3:22-10(b). Defendant must, therefore, demonstrate by a preponderance of the credible evidence that trial counsel's performance fell below the objective standard of reasonableness established in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987). State v. Echols, 199 N.J. 344, 357-58 (2009). To that end, defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

C.

In the context of a guilty plea, the standard to establish an ineffective assistance of counsel claim is modified: To set aside a guilty plea based on ineffective assistance of counsel "a defendant must show that (i) counsel's assistance was 'not within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors [defendant] would not have pled guilty and would have insisted on going to trial.'" Nuñez-Valdez, 200 N.J. at 139 (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). Counsel's performance is effective if counsel provides defendant with "correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J.

10

Super. 16, 22 (App. Div. 2012) (citing Nuñez-Valdez, 200 N.J. at 138). Counsel must not "provide misleading, material information that results in an uninformed plea." State v. Gaitan, 209 N.J. 339, 353 (2012) (quoting Nuñez-Valdez, 200 N.J. at 140). However, when representing a noncitizen criminal defendant, "a defense attorney is required to address, in some manner, the risk of immigration consequences" of a guilty plea. State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016) (citing Padilla v. Kentucky, 559 U.S. 356, 367 (2010)). When the law pertaining to mandatory deportation is "succinct, clear, and explicit," a failure to inform the defendant of this risk satisfies the first prong of Strickland. Padilla, 559 U.S. at 368-69. Defense attorneys "must also advise clients to seek immigration counseling." Blake, 444 N.J. Super. at 296 (citing Gaitan, 209 N.J. at 381).

Here, it is clear from the plea colloquy that defendant was advised by the trial court of his potential exposure if defendant were convicted of the panoply of charges against him. Similarly, defendant answered in the affirmative when the issue of immigration consequences arose. He testified under oath in response to open-ended questions that he "had enough time to look into the [immigration] issue and get whatever advise you need." In his submission, defendant includes text messages and emails in which he expressed concern

11

about the purported lack of advice as to the possible immigration consequences from his guilty plea. These statements directly contradict the testimony that defendant provided under oath during his plea colloquy. Since the contested evidence is, at best, in equipoise, defendant has not carried the necessary burden of proof. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt 5.1 on N.J.R.E. 101(b)(1) (2024-2025).

D.

To establish the prejudice prong to set aside a guilty plea based on an ineffectiveness claim, a defendant must also show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have [pled] guilty and would have insisted on going to trial." DiFrisco, 137 N.J. at 457 (alterations in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Consequently, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "'rational under the circumstances.'" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla, 559 U.S. at 372). That determination must be "based on evidence, not speculation." Ibid.

Here, defendant's attempt to withdraw his guilty plea and proceed to trial on the sixteen-count indictment cannot be understood as "rational" under the

circumstances, considering the asserted strength of the State's case against him and the continued modifications that defendant continued to make during the pendency of the entirety of the proceedings.

As the trial court noted:

> In this case [defendant] was afforded the advice and assistance of adequate counsel at all stages of the case. [Defendant] was aware of the reality of the immigration consequences from the earliest days of the case through and including sentencing. [Defendant] pursued first a trial strategy. Then as a jury was being selected, [defendant] re-entered plea negotiations with the State to secure a plea to an offense that did not have a presumption of imprisonment or the requirements of Megan's [L]aw or parole supervision for life. Then, [defendant] changed course and sought to withdraw his plea, ostensibly because he did not want to accept the potential immigration consequences of his guilty plea. Then, [defendant] set a new tack and withdrew his motion and submitted to sentencing.

We agree with the trial court that defendant failed to produce any credible evidence of any error committed by trial counsel that impaired defendant's ability to proceed to trial or to resolve this matter in the fashion he did.

Any remaining arguments not addressed are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13