**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0847-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DOUGLAS E. WOODSON,
a/k/a DOUGLASS E. WOODSON,
and LIL JOEY,

    Defendant-Appellant.

_____

Submitted March 4, 2020 – Decided April 28, 2020

Before Judges Whipple, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-04-0366.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven J. Sloan, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the July 16, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

On April 26, 2016, defendant was charged in a Burlington County indictment with first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count one); fourth-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(e) (count two); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count three). The charges stemmed from defendant's commission of an armed robbery with a fake gun at a Wendy's where he had previously worked, followed by a police search when he fled into the woods and his subsequent apprehension hiding under the brush.

On August 29, 2016, defendant, who was extended term eligible, entered a negotiated guilty plea to the robbery. In exchange, the State would move to dismiss the remaining counts, and recommend a twelve-year sentence, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, to run concurrent with a parole violation sentence on a prior robbery conviction. Under the plea agreement, defendant also agreed to waive his right to appeal.

A-0847-18T1

On October 28, 2016, defendant was sentenced in accordance with the plea agreement. However, the sentencing judge imposed an eleven-year NERA sentence, instead of the twelve years recommended by the State. On July 28, 2017, defendant filed a timely pro se petition for PCR, alleging ineffective assistance of counsel (IAC), and was assigned PCR counsel. To support his petition, defendant certified his "attorney [coerced him] into taking a plea." He asserted his attorney failed to "undertake certain investigations" to establish, among other things, that his reason for being at the scene was to obtain "free food" that was "discard[ed]" at closing time. He also asserted his attorney failed to file "specific motions," including moving to exclude the show-up identification by the store manager and suppress his arrest and alleged statements to police based on a Miranda[1] violation.

Following oral argument, Judge Jeanne T. Covert denied defendant's petition. In a July 16, 2018 written decision, the judge reviewed the factual background and procedural history of the case, applied the applicable legal principles, and concluded defendant failed to establish a prima facie case of IAC. The judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0847-18T1

Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. Additionally, in rejecting defendant's request for an evidentiary hearing, the judge concluded defendant failed to present any issues that could not be resolved by reference to the existing record.

Initially, the judge recounted the facts as follows:

> On November 19, 2015, at approximately 12:50 a.m., New Jersey State troopers responded to a report of a robbery at a Wendy's fast food restaurant located at 102 Fort Dix Street, Wrightstown . . . . Upon arrival, troopers spoke with the Wendy's employees who stated that, around the time of closing, a man, later identified as [defendant], wearing all black clothing and carrying a gun entered the Wendy's in search of money. After unsuccessfully attempting to locate the money [defendant] fled on foot.
>
> . . . . A short time later, troopers spotted a man, matching the description of the suspect . . . running from the rear of the Wendy's parking lot. The troopers pursued the man . . . on foot into a wooded area. . . . An aviation team and K-9 unit were called to the scene.
>
> The K-9 officer led the troopers to a sewer basin canal where [defendant] was lying face-down in the water. The troopers identified themselves and ordered [defendant] to show his hands. [Defendant] did not comply. At this time, the K-9 officer was deployed for

4

apprehension of [defendant]. [Defendant] continued to ignore demands to show his hands and the troopers entered the water to secure [defendant]. [Defendant] was wearing a black jacket, black shirt, black pants, black sneakers, and had a black ski mask. While apprehending him, troopers asked [defendant] where the gun was located. [Defendant] responded that he had dropped the gun along the tree line after he fell down a hill.

After apprehension of [defendant], [the store manager] was brought to the scene of the arrest. At the scene, a show-up identification was conducted and [the manager] told the troopers that he recognized [defendant] as the suspect of the robbery by his voice and stature. . . . At the police barracks, [defendant] was read his Miranda warnings and signed a Miranda card. The next day troopers returned to the scene of arrest and located a black gun in the wooded area near the location of the arrest.

A few weeks later, [the manager] gave an audio recorded statement to police. [He] told police that . . . [a]t approximately 12:45 a.m., [he] was outside of the restaurant and he noticed a person standing near the drive-thru lane. The person was wearing all black, including a ski mask and gloves. During this statement, he told the police he was certain that [defendant] was the person who committed the robbery. [The manager] explained that [defendant] previously worked at the Wendy's and he frequently closed the store at night and was aware of the closing procedures. Another employee . . . who gave an audio recorded statement to the police a few weeks after the robbery, said . . . he saw a man, [defendant], in all black enter the Wendy's and waive a gun. [The employee] said [defendant] did not say a word and he walked towards the restaurant's back office where the safe was located.

5

In addressing defendant's contention that he received IAC by virtue of his attorney's failure to move to suppress his arrest and alleged statements to police based on a Miranda violation, the judge explained:

> [Defendant] denies he was read his Miranda rights, but this is an unsubstantiated self-serving certification. . . . [A]ccording to police reports, [defendant] volunteered a statement that he committed the robbery because he was "homeless and looking for money" after being read his Miranda rights [at the time of his arrest]. According to police, he did not make this statement as a result of a police interrogation, and even if he was not read his Miranda rights, the statement would have likely been admissible because it was volunteered. Additionally, a recording of this statement was not taken at the scene of the arrest not only because this would have been logistically difficult but also because of [defendant's] refusal to make a statement while being recorded. [Defendant] admitted he was familiar with law enforcement procedures and stated that he would not give a recorded statement . . . because it "came back to bite him" in a past encounter with law enforcement.
>
> A signed Miranda card was completed by [defendant] at the police barracks. No recorded statement was taken at the police barracks apparently because [defendant] refused to give one. . . . [Defendant's] new assertion at oral argument that the signature on the Miranda card was not his lacks either substantiation or credibility.
>
> However, all credibility issues aside, under the prejudice prong of Strickland, [defendant's] arguments are irrelevant. The weight of the evidence against [defendant] was overwhelming. Even if these incriminating statements were not used at trial, it is

A-0847-18T1

highly unlikely that [defendant] would have prevailed. If his statement that he was "homeless and looking for money" and about dropping the gun were suppressed, the police would have inevitably went back the following day, as they did, and found the gun near the scene of the arrest. The evidence of the gun would have been introduced at trial. The fact that [defendant] was seen fleeing from the Wendy's, hid from the police in the woods, refused to comply to turn himself in, knew intimately the Wendy's closing procedures and exactly what door to enter and where the safe was located (as a former employee), and was arrested wearing clothing matching the description of the suspect, was identified by two witnesses, among other facts, would lead a reasonable juror to find [defendant] guilty beyond a reasonable doubt. There is no indication that the result of the proceedings would have been different.

Thus, it is far from certain that [defendant] would have successfully argued a motion to suppress and regardless, he is unable to meet the second prong of Strickland because of the weight of the evidence against him.

In addressing defendant's contention that his statement about dropping the gun would have been suppressed had his attorney filed the necessary motion, relying on State v. Stephenson, 350 N.J. Super. 517 (App. Div. 2002), the judge determined that a "potential motion to suppress his statement pertaining to the gun would not have been meritorious" because the public safety exception applied. See id. at 525 (explaining that the "unwarned questioning about the presence or whereabouts of a gun" permitted under the public safety exception

to the <u>Miranda</u> rule is authorized when the State "demonstrate[s] '(1) there was an objectively reasonable need to protect the police or the public; (2) from an immediate danger; (3) associated with a weapon; and that (4) the questions asked were related to that danger and reasonably necessary to secure public safety.'" (quoting <u>State v. Prim</u>, 730 N.E.2d 455, 463 (1999))).

In that regard, Judge Covert stated "the police had an objectively reasonable need to protect themselves and the public from immediate danger related to the handgun and the questioning related to the handgun was about its location on [defendant] or in the wooded area." The judge expounded:

> When the officers asked where the gun was located, it was unknown to them whether [defendant] still possessed the gun or not. Additionally, [defendant] was hiding in a public wooded area, and although it was at night, the general public could have found the gun causing a threat to the public at large, not to mention the harm that could have befallen the police officers by being shot on the scene.

Likewise, relying on <u>State v. Wright</u>, 444 N.J. Super. 347 (App. Div. 2016), the judge rejected defendant's argument that his attorney was ineffective by failing to challenge the manager's identification. <u>See id.</u> at 360-61 (upholding trial court's finding that misidentification was unlikely based on "the victim's ability to see . . . and provide a 'highly accurate' description" of the assailant prior to the identification, notwithstanding "the inherent suggestibility of a

A-0847-18T1

showup [identification] . . . compounded . . . by several system variables," including "the police impermissibly signal[ing] the victim in a variety of ways" that they believed they had the assailant).

Judge Covert explained:

> Here, a Henderson[2] hearing may have been appropriate because the record . . . does not indicate whether [the manager] was brought to the scene to conduct the show-up identification within a two-hour timeframe. . . . Additionally, there is no evidence from the police reports regarding whether [the manager] was told that [defendant] may not be the perpetrator even though he was arrested and that he should not feel compelled to make an identification. These two system variables are essential to a show-up identification and essential to a trial court in determining whether a Henderson hearing is necessary.
>
> However, even if a Henderson hearing was conducted, it is highly unlikely that [defendant] would have been successful in suppressing the show-up identification. . . . Taking [into] account [the manager's] ability to observe [defendant] at the time of the robbery, not to mention the inescapable and obvious fact that [defendant] was dressed identical to the perpetrator, in all black with a ski mask, uniquely and exceedingly unusual, there was little chance of an irreparable misidentification.
>
> [The manager] had the opportunity to view [defendant] at the time of the robbery. . . . [He] told the detectives the man said something, maybe to him, but that it was just a few words and difficult to decipher

---

2  State v. Henderson, 208 N.J. 208 (2011).

9

. . . . [The manager] was able to list all the items of clothes being worn by [defendant] and he described the gun in precise detail. . . . These descriptors demonstrate the level of attention that [he] exhibited at the crime scene. In his recorded statement, [he] stated that seeing [defendant] at the arrest scene "triggered his mind" and that he was sure that the suspect he saw commit the [robbery] was [defendant] . . . .

Based on these facts, and a weighing of the system variables and estimator variables[, defendant] has failed to prove that his motion to suppress the show-up identification would have been meritorious even if he was granted a <u>Henderson</u> hearing.

Turning to defendant's claim that his attorney was ineffective by failing to "investigate the reason he was at Wendy's" on the night in question, Judge Covert stated:

On June 24, 2016, trial counsel mailed a letter to [defendant] . . . explaining to him that his argument that he was at Wendy's, wearing the same clothes as the suspect and around the same time as the robbery, asking for free food and ran from the Wendy's because he had an outstanding warrant was "too coincidental." In addition, there was strong evidence to rebut this explanation. [Defendant] was arrested wearing the same clothes as the robbery suspect, he told troopers where to find the gun he used for the robbery, and [the manager] identified him at the scene of arrest. Furthermore, the jury would have heard that [defendant] had worked the night shift at the Wendy's, as recently as approximately two months before the robbery, and knew the closing procedures, that the back door would be propped open, the location of the back room of the restaurant and that there is a safe located in

that room.  This is all evidence that weighed in favor of [defendant's] guilt and against his explanation for why he was at the Wendy's.

Next, the judge categorically rejected defendant's assertion that his attorney coerced him into pleading guilty, explaining:

> Trial counsel was able to negotiate a plea that was beneficial to [defendant].  [Defendant] was extended term eligible for sentencing because of his past criminal history.  Specifically, [defendant] had been sentenced for a previous first-degree robbery to ten years in state prison and he was on parole when this charge and conviction occurred.  Trial counsel was able to negotiate a fair deal . . . .  Trial counsel reviewed the discovery and explained her reasoning to [defendant] as to why it was likely a jury would find him guilty.  At his sentencing, [defendant] told the trial court that he was entering his plea freely, knowingly, and voluntarily and that he was satisfied with his counsel's representation.
>
> Based on these facts and the facts surrounding the circumstances leading to [defendant's] conviction, he was not forced to plead guilty nor did trial counsel fail to fully investigate his case.

On appeal, defendant makes the following arguments:

> THE PCR COURT MISAPPLIED THE LAW IN DENYING THE DEFENDANT'S PETITION FOR [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS THIS CONTENTION HE WAS PROVIDED WITH INADEQUATE ASSISTANCE OF COUNSEL.

11

1. THE SHOW-UP IDENTIFICATION WAS IMPERMISSIBLY SUGGESTIVE AND THERE WAS A SUBSTANTIAL LIKELIHOOD OF AN IRREPARABLE MISIDENTIFICATION.

2. THE ARREST WAS UNLAWFUL WHEN THE POLICE FAILED TO ADMINISTER MIRANDA WARNINGS TO THE DEFENDANT ADVISING HIM OF HIS RIGHTS.

3. DEFENDANT'S ALLEGED STATEMENT TO THE POLICE THAT HE DROPPED THE GUN WHEN HE FELL DOWN A HILL WHILE RUNNING FROM THE POLICE SHOULD HAVE BEEN SUPPRESSED AS IT WAS NOT WITHIN THE PUBLIC SAFETY EXCEPTION TO THE MIRANDA REQUIREMENT.

4. DEFENDANT SHOULD HAVE BEEN PERMITTED TO WITHDRAW HIS PLEA BARGAIN TO CORRECT A MANIFEST INJUSTICE.

We reject defendant's arguments and affirm substantially for the reasons articulated in Judge Covert's comprehensive and well-reasoned written opinion. We add only the following comments.

A trial court should grant an evidentiary hearing only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b);

State v. Porter, 216 N.J. 343, 355 (2013). In deciding whether to grant an evidentiary hearing, a PCR court "should view the facts in the light most favorable to a defendant." State v. Preciose, 129 N.J. 451, 463 (1992). See also State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). In turn, we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing. State v. Marshall, 148 N.J. 89, 157 (1997). Additionally, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). We also review de novo the PCR judge's legal conclusions. Harris, 181 N.J. at 415-16 (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

To establish a prima facie claim of IAC, defendant must satisfy the two-prong Strickland test: he must show that (1) "counsel's performance was deficient" and he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

A-0847-18T1

Id. at 687, 694; see also Fritz, 105 N.J. at 52. A defendant "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012).

Under the first Strickland prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90). Indeed, "counsel is strongly presumed to have rendered adequate assistance," Strickland, 466 U.S. at 690, as measured by a standard of "reasonable competence." Fritz, 105 N.J. at 53. However, "'[r]easonable competence' does not require the best of attorneys." State v. Davis, 116 N.J. 341, 351 (1989). Nonetheless, an attorney's failure to investigate "is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. Indeed, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.

Under the second Strickland prong, defendant must prove prejudice. Fritz, 105 N.J. at 52. In order to establish the Strickland prejudice prong to set aside a guilty plea based on IAC, a defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled

guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Moreover, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "'rational under the circumstances.'" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

Applying these standards, we are satisfied defendant failed to make a prima facie showing of IAC under the Strickland/Fritz test, and we discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing. As Judge Covert astutely pointed out, his attorney's letter demonstrated her thoughtful consideration of the evidence, which was overwhelming, as well as her evaluation of defendant's version of events, which was illogical. Further, neither a Henderson motion to challenge the identification nor a Miranda motion to challenge the statements would have been meritorious. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007). Thus, a decision to reject the plea bargain would not have been rational under the circumstances.

Moreover, defendant failed to establish that he was entitled to withdraw his plea under State v. Slater, 198 N.J. 145 (2009).[3] He lacks a credible claim of innocence, and the State would undoubtedly suffer unfair prejudice given the passage of time. See State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) ("[A] defendant may fail on a motion to withdraw a plea under Slater, because he or she lacks a colorable claim of innocence (factor one), and the State would suffer prejudice (factor four) as a result of delay and witness unavailability.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] See Slater, 198 N.J. at 157-58 (establishing four factors trial courts must "consider and balance . . . in evaluating motions to withdraw a guilty plea," namely, "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.").

A-0847-18T1