**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2442-22
                 A-3419-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL ATKINSON,
a/k/a MICHEAL ATKINSON,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SHAQUILLE JOHN,
a/k/a JOHN SHAQUILLE,

      Defendant-Appellant.

_____

Submitted March 6, 2025 – Decided March 21, 2025

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-03-0210.

Jennifer N. Sellitti, Public Defender, attorney for appellant in A-2442-22 (David A. Gies, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant in A-3419-22 (Steven E. Braun, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In these appeals that we scheduled back-to-back and consolidated for the purpose of issuing a single opinion, defendants Michael Atkinson and Shaquille John challenge orders denying their separate post-conviction relief (PCR) petitions without evidentiary hearings. Unpersuaded by their contentions, we affirm.

I.

We restate the facts relevant to this appeal from our prior opinion where we affirmed Judge Regina Caulfield's order denying John's, Atkinson's, and co-defendant and Bond Street shooting victim Jahid Watson's (Watson) application to suppress evidence seized during a police search of a motel room. See State

v. John, Nos. A-4139-22, A-5085-17, A-5677-17 (App. Div. Dec. 15, 2020) (slip op. at 2). Those facts are as follows.

At approximately 9:00 p.m. on December 5, 2014, Detective Alfonso Colon of the Elizabeth Police Department received a telephone call from an anonymous individual, who reported hearing multiple shots fired in a home on Bond Street in Elizabeth. The caller reported seeing two or three individuals carrying another person out of the house. The caller also saw a man and a woman taking duffel bags or suitcases from the house and placing them in a shed. Detective Colon passed this information along to dispatch, who informed him that Sergeant Julian Hilongos was investigating the report and that a shooting victim had been brought to the hospital.

About ten or fifteen minutes later, the individual called Detective Colon a second time. She told the detective a cab had come to the house on Bond Street, and a man and woman carrying large bags got into the cab and left the premises.[1] The anonymous caller specifically identified this cab as Latino Taxi number 57. Detective Colon forwarded this information to Sergeant Hilongos.

---

[1] Detective Colon refers to the anonymous caller as "she." We do the same for consistency.

At the hospital, two police officers attempted to interview the shooting victim, but he was uncooperative. However, the victim's mother and his former girlfriend both identified the victim as Watson. The girlfriend reported that Watson called her after he was shot, and she picked him up near the home on Bond Street to drive him to the hospital.

After two officers unsuccessfully attempted to locate on Bond Street where the shooting occurred, they learned from the caller's report a taxi had been at a home on that street. The taxi company confirmed that one of its drivers had picked up a man and a woman at a specific home on Bond Street and had taken them to a motel on Routes 1 and 9, and then to the Spring Lane Motel.

Because he was concerned the bags the couple were carrying might contain additional victims or weapons, Sergeant Hilongos called for additional units to check for victims or suspects at the Bond Street home and at the Spring Lane Motel. At the Bond Street home, officers found a large amount of blood on the bottom panel of the screen door. The police knocked, announced their presence, and entered the home. They did not locate any victims or other individuals in the home but found blood on the kitchen floor and on the last step before the second-floor landing. The officers then secured the home so they could obtain a search warrant.

A-2442-22

Meanwhile, other officers arrived at the motel, went to the front office, and spoke with the night manager, who allowed them to watch surveillance footage. From the video, the officers learned that a man and a woman matching the description given by the caller had arrived at the motel in a taxi around 10:40 p.m. They carried bags they took from the cab into the motel room.

Believing that these individuals had been present at the scene of the shooting and might be carrying weapons, Sergeant Hilongos instructed officers to report to the motel. Once at the motel, the officers knocked on the door and announced their presence. After a few minutes, a woman opened the door. The police arrested the woman, later identified as co-defendant Nicole Robbins, and the man she was with, who was later determined to be another co-defendant, Myles Sneed. The officers conducted a protective sweep of the room, and in the bathroom, they found a rifle. They secured the room in anticipation of applying for a search warrant.

Sneed later cooperated with the officers and consented to a search of the motel room he had rented, and of the house on Bond Street, where he had been staying for some time. After he signed the written consent form, the police searched the motel room and found an extended ammunition magazine, marijuana, the key and receipt for the room, and approximately $900 in cash.

A-2442-22

The State was ultimately able to connect the rifle found in the motel bathroom to an armed robbery of a bodega that occurred on October 19, 2014. During the robbery, three individuals had entered the store, and two of the robbers began shooting their weapons. As a result, the robbers killed one victim and wounded another. Shell casings found at the scene matched the rifle's shell casings.

On March 13, 2015, a Union County grand jury returned a ten-count indictment charging defendants with robbery, conspiracy, murder, felony murder, attempted murder, and related firearms offenses. Thereafter, John and Robbins filed a motion to suppress the rifle seized from the motel room. Atkinson and other co-defendants joined in the motion.

Judge Caulfield denied the motion finding the police properly entered the Bond Street home without a warrant under the emergency aid exception because they had a reasonable basis to believe an injured person may have been in the home given the blood found on the door and the report of gunfire in or near the home. The judge also held the police properly entered the motel room without a warrant based on the exigent circumstance that the room's occupants were armed and properly discovered the rifle during a protective sweep.

Following the denial of their motion to suppress, both Atkinson and John pled guilty to first-degree aggravated manslaughter and admitted during their plea colloquies to discharging a firearm in the Elizabeth bodega while intending to rob the establishment. Each repeatedly answered in the affirmative to the judge's questions concerning their satisfaction with their respective counsels' representation and advice, and indicated they were entirely satisfied with their performance. The judge thereafter sentenced John to a twenty two-year custodial sentence subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-72, imposed applicable fines, and awarded jail credits from the date of his arrest amounting to 1193 days. The judge sentenced Atkinson to an eighteen-year custodial NERA sentence, imposed fines, and awarded all of his gap time credits as jail time credits, totaling 1232 days.

As noted, defendants appealed the order denying their application to suppress evidence seized from the motel room. John, slip op. at 3. We affirmed the judge's order on December 15, 2020. Ibid. The Supreme Court denied both John's and Atkinson's petitions for certification. See State v. John, 247 N.J. 142 (2021).

John filed a timely pro se PCR petition claiming his plea counsel's representation was constitutionally deficient because counsel "fail[ed] to

A-2442-22

challenge the existence of the alleged anonymous caller" and failed to "move for the disclosure of the caller to verify [her] existence." He also filed a counseled brief in which he asserted plea counsel was ineffective in failing to "obtain the full discovery, including the identity and existence of an anonymous caller," and argued the caller's testimony could lead to his exoneration. John maintained the anonymous caller, if she had been identified, could have testified as to the identity of the suspects leading to his possible exoneration or a more favorable plea. He also argued under the cumulative error doctrine, counsel's failure to learn the identity of the anonymous caller coupled with "other [unspecified] errors recited in prior submitted briefs and supplemental briefs, prejudiced [John's] right to a fair . . . trial."

Atkinson filed a similar timely pro se petition in which he too claimed his plea counsel provided ineffective assistance "due to his failure to challenge the existence of the alleged anonymous caller, . . . move for disclosure of the caller to verify the caller's existence," and "verify . . . the credibility of the anonymous caller." Additionally, Atkinson attested his counsel ignored his repeated requests to "uncover the identity of the anonymous caller" and "obtain any record[s] that would confirm" the existence of the anonymous caller.

Judge Caulfield denied both Atkinson's and John's petitions in separate, well-reasoned written decisions finding neither defendant satisfied the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).[2] In each opinion, the judge found defendants failed to establish Strickland's performance prong because there was insufficient evidence presented that the police knew the caller's identity or to support their argument the call was fabricated by the police. The judge also noted the officers' subsequent investigations corroborated the information provided by the caller and therefore disclosing the caller's identity was unnecessary to ensure a fair determination of the issues raised.

Further, the judge explained even if the police knew the caller's identity, any motion to compel her identity would have been unsuccessful in light of N.J.R.E. 516. She also found John's claim the caller's identity would have led to his exoneration, and Atkinson's claim the call was fabricated solely to justify the search of the motel room, were both baseless and bald assertions.

---

[2] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, 466 U.S. at 687, by demonstrating that: 1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense. The Strickland test has been adopted for application under our State constitution. See State v. Fritz, 105 N.J. 42, 58 (1987).

A-2442-22

With respect to <u>Strickland</u>'s prejudice prong, the judge found the record devoid of evidence suggesting the caller's identity would have altered the outcome of the motion to suppress or defendant's plea negotiations. She also noted both John's and Atkinson's counsel secured favorable plea offers given the severity of the charges and possibility of significantly longer custodial sentences if convicted in each case. As neither defendant established a prima facie case of ineffective assistance of counsel, the judge denied their request for an evidentiary hearing.

In A-3419-22, John presents the following argument for our consideration:

> THE IDENTITY OF THE ALLEGED ANONYMOUS CALLER SHOULD HAVE BEEN REVEALED TO THE DEFENSE AND TRIAL DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE A MOTION SEEKING THE CALLER'S IDENTITY.

In A-2442-22, Atkinson presents the following arguments:

> POINT I
>
> DEFENDANT PRESENTED A PRIMA FACIE CASE OF INEFFECTIVENESS WHERE HIS GUILTY PLEA TO THE BODEGA CRIME AND THE STRENGTH OF HIS REASONS FOR SEEKING TO WITHDRAW IT WERE DEPENDENT ON THE NATURE OF THE RELATIONSHIP BETWEEN AN UNIDENTIFIED INFORMANT AND A LAW ENFORCEMENT OFFICER.

A. The motion judge erred in determining that defendant presented "no evidence" the police knew the identity of the unnamed informant.

B. Defendant's motion to suppress was reasonably likely to succeed on its merits if the nature of the relationship between the unidentified informant and the law enforcement officer had been properly presented.

C. Although defendant ple[d] guilty, he would have insisted on going to trial if the motion to suppress was successful.

POINT II

THE RELIABILITY OF THE UNIDENTIFIED INFORMANT'S REPORT WITHOUT CONSIDERING THE NATURE OF THE RELATIONSHIP BETWEEN HER AND THE LAW ENFORCEMENT OFFICER REQUIRES AN EVIDENTIARY FOUNDATION.

POINT III

THE INFORMANT'S IDENTITY SHOULD HAVE BEEN DISCLOSED TO THE DEFENDANT BECAUSE SHE WAS AN ESSENTIAL WITNESS ON A BASIC ISSUE IN THE CASE.

John further expounds on his single point by contending the "identity of the alleged anonymous caller was integral to his defense." He claims questions remain regarding: 1) "how [the caller] knew there had been gunshots" as opposed to similar non-criminal disturbances such as construction or a car

backfire; 2) the lack of an "explicit identification" of the individuals seen in the vicinity of the Bond Street home; 3) the "caller's eyesight, the distance between the caller's location and the Bond Street address"; and 4) "any physical obstructions blocking the caller's view." John argues these issues were left unaddressed because of the caller's anonymity and answers to those questions may have generated reasonable doubt as to his guilt. He also claims the police could have easily determined, if they did not already know, the caller's identity through a caller identification mechanism on their phones.

Next, he maintains the caller did not witness any illegal activity and, in fact, witnessed events suggesting a non-criminal or accidental shooting given the observation of the probable shooters assisting the injured victim into a vehicle. Since, according to John, the caller did not witness a crime, the judge erred in finding N.J.R.E. 516 would have shielded the caller's identity and potential testimony.

In Atkinson's first point, he asserts, the "nature of the relationship between the unnamed source and Detective Colon is significant because an unidentified caller's 'veracity' and 'basis of knowledge' are 'relevant in determining the value of [their] report.'" Contrary to the judge's decision, the record reveals Detective Colon had a relationship with the anonymous caller because, according to his

testimony at the suppression hearing, she called Detective Colon's cell phone. He avers the "failure of [his] trial attorney to investigate the nature of the relationship was unreasonable" because without information probative of the caller's reliability, the anonymous information she conveyed was insufficient to establish probable cause to support a warrantless search of the motel room. On this point, he explains information that "two unknown persons traveled from a residence where blood was observed to the Spring Lane Motel and checked in without alarming either the motel manager or other guests" was insufficient to justify a warrantless search when the information was based on an anonymous caller's report.

In sum, defendants argue without information received from the anonymous caller, the police would not have had sufficient information to investigate the chain of events ultimately resulting in the rifle's discovery in the motel room. And, if their counsel would have moved to compel the caller's identity, defendants would have attempted to discredit her purported percipient observations.

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris,

181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, like here, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the assistance of counsel in his or her defense. The right to counsel includes "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland, 466 U.S. at 686).

Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

Under the second prong, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the

14

proceeding would have been different." Id. at 694. A petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving [their] right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)). A failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

In a matter involving a guilty plea, to show prejudice, a defendant must establish "a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). A defendant must show that, "had [they] been properly advised, it would have been rational for [them] to decline the plea

15

offer and insist on going to trial and, in fact, that [they] probably would have done so." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

We reject defendants' arguments and affirm the May 31, 2023 order in A-3419-22, and the January 25, 2023 order in A-2442-22 for the reasons expressed in Judge Caulfield's cogent and well-reasoned written decisions. We add the following comments to amplify our decisions.

The judge correctly found both John and Atkinson failed to satisfy the Strickland performance prong. First, even if we indulge defendants' claim the police had prior involvement with the caller based on the fact the call was received on the officer's cell phone, neither defendant presented facts sufficient to overcome the privilege provided in N.J.R.E. 516.

The informer's privilege against disclosure of their identity is well-established and "considered essential to effective enforcement of the criminal code." State v. Milligan, 71 N.J. 373, 381 (1976) (citing State v. Infante, 116 N.J. Super. 252, 257 (App. Div. 1971)). "Without a strong showing of need, courts will generally deny a request for disclosure." State v. McDuffie, 450 N.J. Super. 554, 568 (App. Div. 2017) (quoting State v. Florez, 134 N.J. 570, 578 (1994)). N.J.R.E. 516 "provides that a witness need not provide the identity of an informant unless the identity of that person has already been otherwise

disclosed or 'disclosure of his identity is essential to assure a fair determination of the issues.'" Florez, 134 N.J. at 578.

The purpose of the privilege is twofold: "to protect the safety of the informant and to encourage the process of informing." State v. Sessoms, 413 N.J. Super. 338, 343 (App. Div. 2010) (citing Roviaro v. United States, 353 U.S. 53, 60 (1957)). The privilege "protect[s] the public interest in a continuous flow of information to law enforcement officials." Ibid. (quoting Grodjesk v. Faghani, 104 N.J. 89, 97 (1986)).

Both John and Atkinson failed to provide or support their petitions with facts sufficient to establish a "strong showing of need" for the caller's identity necessary to overcome the privilege. See McDuffie, 450 N.J. Super. at 568 (quoting Florez, 134 N.J. at 578). Thus, the failure of defendants' counsel to file a motion to compel the State to disclose the identity of the caller does not qualify as constitutionally deficient performance because any such motion would not have been successful. State v. O'Neal, 190 N.J. 601, 619 (2007) (holding it is "not ineffective assistance of counsel for defense counsel not to file a meritless motion").

Second, the judge properly concluded both defendants failed to establish how learning the identity of the caller was essential to their defense and

17

necessary to ensure a fair determination of the issues. At the outset, we reject any argument that the police fabricated the existence of the call. There is simply no proof in the record for such an allegation. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Defendants' arguments are reduced to unfounded and speculative contentions regarding deficiencies in the caller's eyesight, her purported inability to distinguish a gunshot from other sounds, and whether her observations were suggestive of innocent or criminal activity. We are unpersuaded by these arguments because they fail to acknowledge that the police independently corroborated each critical fact conveyed by the caller. Indeed, they observed blood at the Bond Street residence, confirmed the existence of a shooting victim, and confirmed a taxi transported individuals to the hotel where the firearm connected to the bodega shooting was recovered.

The judge correctly found that neither defendant presented evidence sufficient to establish Strickland's prejudice prong. Again, all of the critical facts that led the police to the motel were independently corroborated. The judge properly concluded it would not have been rational for defendants to have rejected the State's plea offer. Maldon, 422 N.J. Super. at 486. Atkinson and John faced the possibility of significantly longer custodial sentences if convicted

at trial and, instead, accepted plea offers for considerably shorter sentences. The pleas also afforded each defendant significant jail credits. Thus, given the severity of the sentences defendants faced at trial, and the evidence against them, it would have been irrational for them to reject their respective pleas. Ibid.

Finally, because defendants did not establish a prima facie case of ineffective assistance of counsel, we also conclude the judge did not abuse her discretion in denying defendants' requests for evidentiary hearings. See State v. Preciose, 129 N.J. 451 (1992). To the extent we have not addressed specifically any of defendant's remaining arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in A-3419-22 and A-2442-22.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division