**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3302-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARIO DELSAZ, a/k/a
MARIO DEL, MARIO SAZ,
MARIO DEL SAZ, and
MARIO DEL-SAZ,

    Defendant-Appellant.

_____

Submitted December 1, 2025 – Decided January 14, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-06-0573.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, on the brief).

PER CURIAM

Convicted by way of plea agreement to three counts of first-degree robbery, N.J.S.A. 2C:15-1, defendant Mario Delsaz appeals from a May 2, 2024 denial of his petition for post-conviction relief ("PCR") based on ineffective assistance of plea counsel without an evidentiary hearing. Defendant primarily argues plea counsel was ineffective because he failed to communicate with him adequately during plea negotiations, choosing instead to communicate with defendant's fiancée via text messages. Defendant also contends plea counsel misled him into believing the prosecutor was considering approving his application for Drug Court and likewise that plea counsel was "totally unprepared" to try his case, leaving him allegedly little choice but to accept the State's plea offer of 15 years' incarceration subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. Discerning no support for defendant's claims of ineffective assistance of counsel, we affirm the PCR denial.

I.

Given the extensive record before us, we summarize only the facts pertinent to defendant's appeal of the court's denial of his PCR petition.

A-3302-23

<u>Defendant's Arrest</u>

In July 2017, defendant and another individual, Brian Torres ("co-defendant"), went to the Empire Casino in Yonkers, New York where they encountered another casino patron, accompanied by his wife and adult son, allegedly "flashing some money out in public." Casino video surveillance showed defendant and co-defendant following the patron and his family as they left the casino, and returned to their home in Tenafly, where defendant and co-defendant robbed them at gun point. The ensuing police investigation led police to defendant and co-defendant based largely on video surveillance taken from the casino, road cameras, license plate reader information, and cell phone records, which captured their movements from Yonkers to Tenafly. Defendant and co-defendant were arrested less than two weeks later.

A Bergen County Grand Jury subsequently indicted them in June 2018 with: (1) second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; (2) three counts of first-degree robbery, N.J.S.A. 2C:15-1 with accomplice liability, N.J.S.A. 2C:2-6; (3) second-degree possession of a

handgun without a permit, N.J.S.A. 2C:39-5(b); and (4) second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a).[1]

Post-Indictment Plea Offer and Communications

Defendant retained plea counsel in May 2018 following his indictment while he was being held in jail, where he remained until he was sentenced to prison following his plea. Although the parties disagree about the specific number of times plea counsel visited defendant while he was awaiting trial,[2] there is no dispute that defendant and plea counsel often communicated with one another via defendant's fiancée, who relayed numerous text messages she received from plea counsel to defendant and vice versa. The record indicates that defendant received at least four plea offers from the State, the first three of which were rejected by defendant.[3]

---

[1] Both defendants were initially indicted on multiple counts of first-degree armed robbery and a superseding indictment added conspiracy and firearms charges.

[2] The record shows that defendant met with plea counsel at the jail on at least four occasions, though plea counsel later testified he had met with defendant in jail "in the area of 10 to 14 times," as well as at other times when he was present in court.

[3] Prior to May 2018, the State extended an initial plea offer of twelve years to defendant, subject to NERA, which defendant rejected. In October 2018, the State made a second offer, this time of six years flat, not subject to NERA.

4

On November 26, 2018, the court held a final disposition conference in which plea counsel indicated that there had been some discussions between the parties about "put[ting] [defendant] into [D]rug [C]ourt."[4]  However, plea counsel further stipulated that it appeared "final" that an agreement between the parties could not be reached as to allow this to occur.

The record also shows that on December 18, 2018, counsel texted defendant's fiancée "[t]hey did not bring [defendant] over at 1:30.  By the time the [j]udge found out and told them to get him it was already too late.  We couldn't wait.  So he is on for Wed[nesday]."  On this same date, after the fiancée

---

Defendant similarly rejected this offer, although he later asserted that he would have accepted it had his plea counsel adequately and accurately informed him about the likelihood of his admission into Drug Court.  A third plea offer of six years, subject to NERA, was presented to the defendant in either November or December 2018.  The record is indicative of the fact that defendant chose to either expressly reject this offer or otherwise permitted it to lapse.  Defendant maintains, however, that although he was initially dismissive of the plea, he later decided to accept it, but claims the State revoked the offer before he had a chance to communicate his change of heart to plea counsel.  Notably, defendant asserts that he was told by plea counsel that the six-year NERA plea would expire on December 18, 2018 at his next-scheduled court appearance, but because the jail mistakenly failed to bring him to court on that date, he was unjustly deprived of the opportunity to accept the offer.  Finally, in March 2019, the State extended a fourth plea offer of fifteen years, subject to NERA, which defendant ultimately accepted.

[4]  While "Drug Court" is now known as "Recovery Court," we utilize the term "Drug Court" throughout the remainder of this opinion to be consistent with the terminology utilized by the parties.

A-3302-23

inquired whether there had been any updates in defendant's case, plea counsel texted "[w]e are going to have to try the case. The [p]rosecutor has cut his offer literally in half since[] I got into the case. But he is not giving him probation. And [defendant] is not accepting State Prison."

In January 2019, plea counsel responded to the fiancée's inquiry about the date of defendant's upcoming court appearance by texting "1/22. I realize this has come at you guys pretty quickly. [The State] did make [defendant] a very reasonable offer in October. He rejected it. Now, for some reason Torres['s] coming back has [the State] withdrawing all offers."

The court held a pretrial conference on January 24, 2019, during which the prosecutor: (1) requested that defendant's case be severed from that of co-defendant Torres's case on the grounds that co-defendant had given a confession inculpating defendant; and (2) confirmed that any and all formal or informal plea offers had been revoked by a letter sent to defendant's counsel several weeks prior. During the conference, the State prosecutor also noted that there were "no counteroffers [defendant was] willing to entertain," and plea counsel relatedly stated "my understanding is that all offers were revoked weeks ago." Also during the conference, plea counsel advised the court that he had another trial set to begin in Passaic County in the very near future and expressed concern

that, were defendant's case to also go to trial, that would place him in back-to-back trials and put "[his] client [at] a bit of a disadvantage when his lawyer is preparing simultaneously for two trials."  At the conclusion of the pretrial conference, the court set a trial date for March 26, 2019, but encouraged the parties to continue plea negotiations.

On February 5, 2019, plea counsel texted defendant's fiancée that defendant was "very nervous about trial.  So much so that our last couple conversations weren't productive because he was trying to explain that he wanted to enter a plea the entire time and the prosecutor shouldn't have revoked his offer."

On March 19, 2019, plea counsel again texted defendant's fiancée:

> I am fighting back and forth with the prosecutor and the judge about moving [defendant's] trial date.  I was obviously hoping to have a firm answer before going to see [defendant].
>
> The issue is that I have been on trial in Passaic County for the last four weeks.  That trial ended this past Thursday afternoon with an acquittal.  But, as a consequence, I have not been able to prepare [defendant]'s case for trial.  And I have been very upfront with the court about that.
>
> The Passaic County trial was only supposed to take one week.  That would have left me a full month to prepare for [defendant]'s trial, which is more than enough.  However, due in part to issues with the jury, that trial

lasted 4 weeks instead of 1 week and it is impossible to prepare for trial while actually on trial on another matter.

It is extraordinarily and undeniably unfair to [defendant] to require his lawyer to try his case with literally one week to prepare. But the prosecutor is object[ing] to any adjournment. That is no wonder. I'm sure they would rather try a case against me when I've just been on trial for a month and haven't been able to prepare.

However, despite plea counsel's apparent efforts, the court ultimately denied counsel's request for an adjournment of the trial.

Six days before defendant's trial was set to commence, plea counsel texted defendant's fiancée that the State had extended defendant a new and final plea offer of 15 years, subject to NERA. Plea counsel further recommended that defendant accept the plea, emphasizing that defendant had previously rejected a prior plea offer of just 6 years and warning of potentially "catastrophic" consequences should he be convicted at trial.

Defendant's Plea

On March 22, 2019, defendant pleaded guilty to three counts of first-degree robbery as charged in the superseding indictment, and the State agreed to recommend a sentence of 15-years' incarceration subject to NERA with each count to run concurrent to the other and a dismissal of all remaining charges.

8

The court conducted the initial questioning as to defendant's understanding of the plea offer and voluntariness in accepting its terms.

COURT: You decided to plead guilty today?

DEFENDANT: Yes.

COURT: Yes? All right. Did anybody force you to do that?

DEFENDANT: No.

COURT: Is it a voluntary decision on your part?

DEFENDANT: Yes.

COURT: You considered the downside, the upside, and decided this is the right thing for you to do at this point in your life. Is that fair to say?

DEFENDANT: Yes.

. . . .

COURT: Okay. It seems to me when we talk, and this isn't the first time I've had you here, you are always paying attention. You're right on top of things and specifically today, you are clear minded. If I didn't know why you were here, I would at least think [you are] of clear mind. [You're] not under the influence of any drug, alcohol, or any substance that would prevent [you] from thinking clearly and making an important decision. Is that true?

DEFENDANT: Yes.

. . . .

A-3302-23

COURT: Did [plea counsel] answer all your questions when he went through this [plea] form?

DEFENDANT: Yes.

COURT: He didn't just start advising you today. He's been your lawyer for quite some time, right?

DEFENDANT: Yes.

COURT: Are you satisfied with his advice?

DEFENDANT: Yes.

COURT: Okay. So let's see, you have admitted that you committed these offenses for which you are charged, correct?

DEFENDANT: Yes.

COURT: And you understand what the charges mean, right?

DEFENDANT: Yes.

COURT: And you understand that this is subject to the [No] Early Release Act, so if you are sentenced to 15 years, you're going to have to serve 12 years and six months. You understand that, right?

. . . .

DEFENDANT: Yes.

Plea counsel examined defendant regarding the factual basis for the robbery charges. Defendant admitted that in the early hours of July 2, 2017, he

exited his car and approached the family with the intent of taking property from them under threat of harm from a gun.

Defendant's fiancée texted plea counsel on May 2, 2019, stating "I apologize for [defendant]'s stubbornness thank you for all of help."  Plea counsel responded, "[t]here is nothing to apologize for.  He knows he should've taken the 6 while he had it and now it's everyone's fault but his that he didn't."

In a subsequent written response to defendant made on July 5, 2019, plea counsel wrote:[5]

> Ultimately, in December 2018 and upon learning that [] Torres was being transferred to Bergen County, [the Assistant Prosecutor] revoked your plea offer, discontinued plea negotiations and asked that a trial date be set.  I met with you in the jail the same day I received that letter and you pleaded with me, through tears and crying, to get you a plea offer again.  Candidly, this came as a shock to me given that it was you who directed me to inform the prosecutor that you would only accept Drug Court or a trial.  At the Pre-Trial Conference you cried, refused to sign the paperwork and pleaded with me to get you a plea offer.  Again, this was difficult to process given that you'd rejected the six (6) flat and directed me to tell the prosecutor that you would only accept either Drug Court or a trial.
>
> . . . I was required to prepare, as best I could, for your trial while also on trial in another county.  This left me very much unprepared to try your case but it does not

---

[5] Defendant's letter to plea counsel is not part of the record before us.

mean we literally did nothing to prepare. I can assure you that we did not sit by and do nothing in the hopes [sic] that your trial date would be adjourned. We did what we could, and you will be provided with an accounting of that time, but were unprepared in any case.

You are completely justified in feeling forced into your plea, given that I was not prepared to try your case due to circumstances beyond my control and [the court] refused to adjourn your trial date. You were put in a position where you had to choose between accepting a very high plea offer (although it was only three (3) years higher than your initial offer a year earlier) or going to trial with an attorney who was not prepared to effectively try your case and with a judge who indicated he would sentence you to at least thirty (30) years upon conviction. . . . You are not, however, justified in directing your anger or frustration towards me or in implying that I somehow did not earn the fees that you paid me. I secured an incredible plea offer for you, a fraction of the time that Brian Torres ultimately accepted, and you rejected it and asked for a trial.

On August 22, 2019, represented by a new attorney, defendant moved to withdraw his guilty plea pursuant to State v. Slater, 198 N.J. 156 (2009). The court conducted the Slater hearing on two non-consecutive days, September 20 and October 17, 2019, with testimony from defendant, his fiancée, and his then-former plea counsel. Defendant testified that he did not commit the charged robberies and claimed that he "lied when he admitted that he was involved in the armed robbery" at his plea hearing, stating, "I know that I didn't say the truth

on that day." He also averred his plea was not voluntary, and that he was pressured and coerced into entering a plea due to plea counsel's lack of trial preparation. He further described his infrequent and inadequate communication with plea counsel, explained that he was not brought to court on the alleged cutoff date to accept the 6-year NERA plea, and stated that plea counsel had confused him leading up to his plea by providing him with mixed signals regarding his eligibility for Drug Court.

Plea counsel testified that, "[a]t the time [defendant's] trial began, yes [I would have been prepared for the trial]. I was not prepared prior to that. . . . I had to do everything in my power to get prepared, yes, and I'd have been prepared."

The trial court subsequently denied defendant's Slater motion and issued a written order and decision, stating that: (1) defendant's claim of innocence was not "colorable" because his testimony that he had previously lied under oath during his guilty plea entered on March 22, 2019 was not believable; (2) defendant's reasons for withdrawal of his guilty plea were that he "would have accepted a lesser [] sentence," and that his "inclination to accept 12 years, knowing it must be based upon a truthful factual basis renders [his] claim of innocence illogical"; (3) defendant's plea had been the result of "lengthy plea

13

bargaining"; and (4) prejudice would "be visited upon the State should this court vacate the plea" because defendant's victims, who had by then permanently relocated to the Republic of Korea, had already made plans to return to the United States for the March 2019 trial and the trial court was uncertain whether they would be willing "to return again."[6]

On January 24, 2020, the court sentenced defendant to 15 years in New Jersey State Prison, subject to NERA, for three counts of first-degree robbery, consistent with the plea agreement. Defendant appealed and approximately one year later, on February 8, 2021, we reviewed defendant's sentence and concluded that: (1) the findings of fact by the trial court "regarding aggravating and mitigating factors were based on competent and credible evidence in the record"; (2) the trial court "correctly applied the sentencing guidelines enunciated in the Code"; and (3) the trial court "did not abuse its discretion in imposing the sentence" that was ultimately given. State v. Delsaz, Docket No. A-2704-19 (App. Div. Feb. 8, 2021) (citing State v. Cassady, 198 N.J. 165 (2009); State v. Roth, 95 N.J. 334 (1984)).

---

[6] While the court did not explicitly make comprehensive credibility findings, it did include in its written statement that "[w]hen questioned on cross-examination, [defendant] feigned memory loss when hard questions were posed to him," suggesting defendant's testimony at the Slater hearing was less than credible.

A-3302-23

Defendant's Petition for PCR

On March 8, 2023, defendant filed a petition for PCR, asserting that: (1) he received ineffective assistance of counsel during the plea stage in violation of the Sixth Amendment; (2) his judgment of conviction should be amended to conform to the sentence imposed on his co-defendant; (3) the prosecutor acted vindictively by adding three counts in a superseding indictment; (4) his claims were not procedurally barred; and (5) he established a prima facie case warranting an evidentiary hearing.

On May 2, 2024, the PCR court issued a written opinion denying defendant's petition as barred for having failed to make a prima facie claim for ineffective assistance of counsel.[7] Applying the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984), the PCR court first determined that plea counsel's actions in defendant's case were neither objectively unreasonable nor deficient because plea counsel:

> (1) [had] spent months negotiating plea deals for defendant[]; (2) kept defendant[] and defendant[]'s family apprised of the status of the case; (3) communicated each plea offer to defendant[] despite defendant[]'s repeated rejections; (4) helped defendant[] with his application to Drug Court; and (5) was transparent regarding his unpreparedness for trial,

---

[7] The PCR judge, who is now deceased, was a different judge than the one who earlier had presided over the plea and plea withdrawal hearing.

but he also testified under oath that had the matter proceeded to trial, he would have been prepared and ready to try the case.

The PCR court further opined that defendant had failed to establish that plea counsel's actions had prejudiced his case because:

> it is clear from the submissions to the court that [plea] counsel's various efforts to get a favorable plea offer were in vain due to defendant[]'s unwavering stance that it was "Drug Court or trial." The court finds that defendant[], who may have regrets about rejecting the multiple favorable plea offers secured by [plea] counsel, cannot now claim ineffective assistance of counsel with no evidence to support his claim.

Because defendant failed to satisfy either prong of <u>Strickland</u>, the PCR court denied his PCR petition without an evidentiary hearing. This appeal followed.

Defendant raises the following points for our consideration:

POINT I

BECAUSE [PLEA] COUNSEL DID NOT COMMUNICATE WITH DEFENDANT IN A TIMELY FASHION, DEFENDANT WAS DENIED A FAVORABLE RESOLUTION OF HIS CASE AND BECAUSE [PLEA] COUNSEL[] WAS TOTALLY UNPREPARED FOR TRIAL, DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO COUNSEL.

A.    Counsel Was Ineffective By Failing To

16

Communicate With Defendant.

B. Due To Counsel['s] Ineffective Representation, Defendant's Guilty Plea Was Not Voluntary.

## II.

We review the denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). To reverse a conviction based on ineffective assistance of counsel, a defendant must demonstrate that both: (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial." Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of Strickland, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015).

Under the "'second, and far more difficult prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is sufficient to undermine confidence in the outcome."

<u>Gideon</u>, 244 N.J. at 550-51 (alteration in original) (quoting <u>Strickland</u>, 466 U.S. at 694). Proof of prejudice under <u>Strickland</u>'s second prong "is an exacting standard." <u>Id.</u> at 551 (quoting <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must 'affirmatively prove prejudice'" to satisfy the second prong of the <u>Strickland</u> standard. <u>Ibid.</u> (quoting <u>Strickland</u>, 466 U.S. at 693).

To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [they] would not have pled guilty and would have insisted on going to trial.'" <u>State v. Gaitan</u>, 209 N.J. 339, 351 (2012) (quoting <u>State v. Nuñez-Valdéz</u>, 200 N.J. 129, 139 (2009)). A defendant must show that, "had [they] been properly advised, it would have been rational for [them] to decline the plea offer and insist on going to trial and, in fact, that [they] probably would have done so." <u>State v. Maldon</u>, 422 N.J. Super. 475, 486 (App. Div. 2011). "[C]ourts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." <u>Gaitan</u>, 209 N.J. at 350 (citation omitted). A defendant must "do more than make bald assertions that [they were] denied the effective assistance of counsel" to establish a prima facie

18

claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). It is defendant's burden to prove his claim by a preponderance of the evidence. Gaitan, 209 N.J. at 350.

"Under Rule 3:22-4, a defendant is barred from raising any issue in a PCR petition that could have been raised on direct appeal unless one of three enumerated exceptions apply."[8] State v. Wildgoose, 479 N.J. Super. 331, 344 (App. Div. 2024) (citing State v. Nash, 212 N.J. 518, 546 (2013)). Those exceptions are:

> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or (3) that denial of relief would be contrary to a new rule of constitutional law under either the [federal or State constitutions].
>
> [R. 3:22-4(a).]

Under Rule 3:22-5 "[a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding . . . or in any appeal taken from such proceedings."

---

[8] The State has argued a procedural bar in its brief, although the PCR judge did not rest his decision on a procedural bar.

## III.

As a preliminary matter, we decline to conclude defendant's PCR petition is procedurally barred despite the prior <u>Slater</u> hearing, which included extensive testimony regarding the circumstances surrounding defendant's plea, including plea counsel's testimony about the events leading up to defendant's acceptance of the State's plea offer. Additionally, the State's opposition to this appeal is primarily focused on the merits, or lack thereof, of defendant's claims. Accordingly, we conclude it is appropriate to address the merits of defendant's arguments in the interest of justice.

Having conducted a de novo review of the record and guided by the above legal principles, we reject defendant's arguments that the PCR court erred in denying his PCR petition and affirm substantially for the reasons set forth in the court's cogent decision. In short, defendant failed to establish plea counsel's representation was constitutionally deficient or ineffective, or that he suffered any prejudice by accepting the State's plea offer to 15-years subject to NERA, in the face of a potential 30 to 60-year sentence if convicted of the three first-degree robbery charges against him. We add the following comments to amplify our opinion.

## A.

In his first substantive argument, defendant contends the PCR court erred in finding "counsel was not ineffective in handling his case." Defendant primarily argues plea counsel was ineffective by failing to communicate directly with him and by communicating with him through text messages sent to and received by his fiancée. He further argues that "[b]y text message, information was confused, incorrect, and counsel's proposed behavior was misleading." He also argues that "ultimately, prior to the trial date, [he] was informed that counsel was not prepared as counsel had been involved in a lengthy trial and the trial judge would not grant an adjournment." Defendant maintains that at that juncture, he had no choice but to enter a guilty plea to an unfavorable plea bargain due to plea counsel's ineffective representation.

The State, however, disputes defendant's contentions of ineffective communication and ineffective assistance and maintains that the record shows that defendant refused all plea offers communicated to him by counsel "until he eventually pleaded guilty in exchange for a [15]-year sentence." To establish their point, the State reviewed the procedural history of plea negotiations, the motion to withdraw the guilty plea and defendant's sentencing, highlighting that plea counsel "communicated the State's six-year plea offers to defendant," that

defendant "rejected all custodial plea offers 'without exception,'" and that this was corroborated by both text messages and testimony at the <u>Slater</u> hearing.

The State maintains defendant "did not receive ineffective assistance of plea counsel in recommending that [he] plead guilty to avoid a trial and possible conviction for first-degree armed robbery of three separate victims that could have resulted in a maximum [60]-year consecutive sentence with the possibility of an extended-term sentence." The State further challenges defendant's ability to satisfy either the first and second prongs of <u>Strickland</u>, asserting that "[c]ontrary to the defense's failure-to-communicate argument, the record shows that [plea counsel] stayed in frequent contact with defendant," although he mainly communicated via his fiancée. The State notes that during the <u>Slater</u> hearing, defendant's fiancée testified she would read plea counsel's text messages to defendant during their calls and he would advise her how to respond.

Addressing plea counsel's practice of communicating with defendant via text messages to his fiancée, while this particular form of communication may not have been ideal, we note there is nothing in the record to suggest that it was not effective. Defendant argues that "[b]y these text messages, information was confused, incorrect, and counsel's proposed behavior was misleading." As the

22

State posits, by defendant's own admission at the <u>Slater</u> hearing, defendant would ask his fiancée to text plea counsel; thus, it was at his request that plea counsel communicated to and through his fiancée "'whatever [defendant] needed to say to [plea counsel].'" Plea counsel obliged, engaging in frequent back-and-forth messaging with defendant's fiancé over the course of at least ten months. Thus, defendant's first argument is without merit.

Defendant's additional arguments that plea counsel was ineffective for rarely visiting him in jail and that "jail records show that [plea counsel] only visited [him] twice" are similarly meritless. During the <u>Slater</u> hearing, plea counsel testified that he visited defendant "fourteen times and at least three times in the week before he pleaded guilty in March 2019." Defendant also confusingly testified "[v]ery seldom did [plea counsel] come to visit," though he later acknowledged "[w]e had multiple discussions about disposition of the case beginning . . . mid-April into May" of 2018.

The PCR court rejected defendant's arguments, finding that plea counsel's "months-long efforts to secure defendant a favorable plea offer did not change defendant's mind about accepting any plea offers as evidenced by defendant's unwavering stance that it was 'Drug Court or trial.'" Defendant makes these allegations absent any supporting proof, and thus his arguments amount to bald,

23

conclusory and self-serving assertions which are insufficient to establish his claims that plea counsel's performance fell below the requisite constitutional standard. See Cummings, 321 N.J. Super. at 170.[9]

Moreover, defendant maintains that an evidentiary hearing is necessary "to properly flush out the timeline of the information that defendant received and the amount of time that [plea counsel] actually explained these offers." However, we have consistently held that a defendant is entitled to an evidentiary hearing only if he can first establish a prima facie case of ineffective assistance of counsel under Strickland; the purpose of any such evidentiary hearing is not to invite a "fishing expedition" for the purpose of establishing that counsel's performance was deficient. Rather, evidentiary hearings are primarily designed to resolve genuine issues of material fact, and a hearing is only warranted when the defendant presents a prima facie case in support of post-conviction relief, which is not the case here. See R. 3:22-10(b); State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023).

---

[9] Furthermore, as the State discusses in its brief, defendant's argument that plea counsel only came to see him twice is belied by the record, which as we noted above shows at least four in-person visits to the jail in the single-page document before us.

B.

Defendant next contends "it is clear that counsel's lack of attention to [his] case had a prejudicial effect on the outcome . . . and that due to counsel's inattention . . . the result of this case was different than it should have been." Hereto, defendant's arguments are devoid of any support, as he points to nothing in the record to show that plea counsel provided confusing or misleading information, and there is likewise no support for his contention plea counsel was inattentive. To the contrary, the record demonstrates that plea counsel maintained communication with defendant and his fiancée about the State's various plea offers and provided advice to defendant at multiple court conferences. The record also makes abundantly clear that defendant consistently rejected the State's plea offers in the hope and pursuit of admittance to Drug Court.

Defendant also suggests plea counsel misled him into believing Drug Court was possible only to have the prosecutor deny his admission. Again, the record clearly indicates that the State rejected defendant's admission to Drug Court in June 2018, and it was defendant's choice to reject all subsequent offers in what can be characterized as an unreasonable pursuit of a diversionary program even though he had been indicted on several first-degree robbery

25

charges. See State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (holding that a PCR petitioner must demonstrate that rejecting the plea offer and proceeding to trial would have been a rational decision under the circumstances).

## C.

Additionally, the PCR court rightfully rejected defendant's argument that plea counsel provided ineffective assistance for unsuccessfully seeking to adjourn his trial, an application which was rejected by the court. Contrary to defendant's assertions, the record conveys that plea counsel vigorously sought an adjournment of the trial and explained to the court that he felt unprepared to try defendant's case so soon after being involved in a month-long trial in another county, which left him with merely a week to prepare for defendant's trial. Despite his protestations, however, the court denied his application and scheduled defendant's trial. Under these circumstances, we are hard-pressed to conclude plea counsel's representation was deficient for having properly sought an adjournment of defendant's trial, even though his application was ultimately denied by the court. Moreover, defendant promptly notified defendant and his fiancée of the court's denial of his application for an adjournment. As such, plea counsel's actions cannot reasonably be interpreted as falling so outside the "wide range" of professional competence to have violated defendant's Sixth

Amendment right to the effective representation of counsel. Strickland, 466 U.S. at 690; see also Fritz, 105 N.J. at 52.

Moreover, even if defendant could establish that plea counsel's representation was deficient as required under Strickland's first prong, we are unpersuaded that he has satisfied Strickland's second prong requiring him to have been prejudiced by counsel's actions. Because defendant pleaded guilty to the first-degree robbery charges, he must prove "that there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial," Gaitan, 209 N.J. at 351 (2012) (quoting Nuñez-Valdéz, 200 N.J. at 139), and if properly advised, it would have been rational for him to decline the plea offer and insist on going to trial. Defendant makes no such showing and given his exposure to a 60-year sentence if convicted on all charges and sentenced to consecutive terms, as the State argued, he cannot demonstrate it would have been rational for him to decline the State's plea offer of 15-years, subject to NERA, or at least 12-years.

D.

Lastly, we turn to consider plea counsel's statements to defendant and his fiancée that he was unable to effectively prepare for trial and defendant was "completely justified in feeling forced into [accepting the] plea, given that [plea

counsel] was not prepared to try [defendant's] case."  Defendant argues plea counsel's statements are essentially admissions that he provided ineffective assistance.  Rather, plea counsel's statements are indicative of an expression of empathy towards his client given that counsel knew how disappointed defendant was at the prospect of serving at least twice as much time in prison than he had initially been offered (6 instead of 12-years' incarceration), and more time than his co-defendant.  Despite those statements, plea counsel's overall representation was neither constitutionally deficient nor prejudicial.  Rather, the record shows that while plea counsel was clearly concerned about preparing for defendant's trial, he later testified that he would not have stood idly by but would have been prepared and ready to try defendant's case.  We agree with the PCR court that "[plea] counsel's various efforts to get a favorable plea offer were in vain due to defendant[]'s unwavering stance that it was 'Drug Court or trial,'" and "defendant[], who may have regrets about rejecting the multiple favorable plea offers secured by [plea] counsel, cannot now claim ineffective assistance of counsel with no evidence to support his claim."

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude it is because they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3302-23